(March 24, 1992)

■ THOMSON U.S. INC., Formerly INTERNATIONAL THOMSON INC., et al., Respondents, v THOMAS H. GOSNELL, Appellant, et al., Defendant.—Order, Supreme Court, New York County (David B. Saxe, J.), entered on or about July 16, 1991, which, *inter alia,* granted so much of the cross-motion of plaintiffs-respondents as sought to disqualify the law firm of Nixon, Hargrave, Devans & Doyle as counsel to defendant-appellant Gosnell and disqualified the firm from representing any other party in this action, unanimously affirmed, with costs.

This action arises out of the sale by the shareholders of plaintiff-respondent the Lawyers Cooperative Publishing Com-

pany ("LCP") to plaintiff-respondent Thomson U.S. Inc. ("Thomson"). The acquisition was accomplished by creation of Thomson's wholly owned subsidiary corporation, ITI (LCP) Inc., which merged with LCP, with LCP the surviving corporation. The merger agreement contained representations and warranties by LCP concerning its business affairs and properties, and provided that a portion of the purchase price was to be deposited in an escrow account to be used, *inter alia,* to indemnify Thomson and/or the surviving corporation as a result of any lawsuits asserted due to misrepresentations, breach of warranties, etc. If no claims were asserted within one year, the funds were to be released to the former shareholders.

The disqualified law firm, Nixon, Hargrave, had acted as LCP's general outside counsel for the previous fifty years, and represented LCP prior to the sale to Thomson. When plaintiffs commenced this declaratory judgment action seeking entitlement to the entire escrow fund for alleged breach of representations and warranties, the selling shareholders' representative, Thomas H. Gosnell, retained Nixon, Hargrave, which had represented the shareholders during the sale. Plaintiffs moved to disqualify the Nixon, Hargrave firm on the ground that representation of the selling shareholders conflicted with the firm's prior representation of LCP, since the firm had rendered legal advice to LCP prior to the merger, relating to the very matters underlying the dispute in the declaratory judgment action. The IAS court held that the firm's long service to LCP, and the fact that it had rendered legal services to the plaintiff LCP in the specific matter in dispute, necessitated the disqualification. We agree.

Disqualification of a party's former counsel is required when there is a "substantial relationship between the issues in the litigation and the subject matter of the prior representation, or where counsel had access to confidential material substantially related to the litigation" *(Cooke v Laidlaw Adams & Peck,* 126 AD2d 453, 456). An attorney is prohibited from representing a party whose interests are adverse to those of a former client because "the first client is entitled to freedom from apprehension and to certainty that his interests will not be prejudiced in consequence of representation of the opposing litigant by the client's former attorney", who "must avoid not only the fact, but even the appearance, of representing conflicting interests" *(Cardinale v Golinello,* 43 NY2d 288, 296).

In the instant action, plaintiffs' claims are based on alleged improper accounting treatment of certain contracts, alleged

underpayment of taxes, and understatement of tax liability. While the firm denied giving accounting advice or rendering tax advice, it did admit to structuring a transaction in accordance with said advice, working closely with the accountants, and preparing an opinion letter with regard to the underlying contracts. Thus, the issues in the present litigation are substantially related to those upon which the firm gave advice to LCP when acting as its general counsel, and while the firm may have dealt with the selling shareholders and officers, its loyalty was to the corporate entity, LCP *(see,* Code of Professional Responsibility DR 5-108; *Evans v Artek Sys. Corp.,* 715 F2d 788). Further, the ethical duty to preserve client confidences, " 'unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge' " *(Brennan's, Inc. v Brennan's Rests.,* 590 F2d 168, 172, quoting ABA Code of Professional Responsibility EC 4-4 [1970]).

The defendant's strong reliance on *International Elecs. Corp. v Flanzer* (527 F2d 1288) is misplaced, although there are several parallels with the instant case. *International Elecs.* involved a suit by a parent corporation against the selling shareholders of a corporation whose assets and business were acquired by the parent by means of a merger with the parent's subsidiary corporation. The sold corporation, Elmenco, merged with the subsidiary, Electro Motive Corporation (EMC), with EMC surviving the merger, and Elmenco becoming, in the words of the court, "defunct" *(supra,* at 1292). International, the parent, and EMC sued the shareholders of the former Elmenco, alleging that they had made misrepresentations during negotiations for the sale, and were guilty of fraud, breach of contract and violation of Federal securities laws.

International and EMC moved to disqualify the law firm representing the selling shareholders on the ground that one of the defendants was a retired partner of the firm, and might be required to testify, and on the further ground that under Canon 4 of the Code of Professional Responsibility the sellers' law firm should not be permitted to accept employment adverse to its former client in regard to matters substantially related to the subject matter of the earlier representation. In ruling against disqualification, the court reasoned that the merger was, in effect, a sale, and that the law firm had represented the sellers, i.e. the defendant shareholders. Therefore, the law firm and the plaintiffs-buyers were always on opposite sides.

In the case at bar, LCP did not by any means become defunct, but rather continued its existence (after merging with a shell corporation created specifically for that purpose) with the same name, offices, personnel, products, assets and liabilities. As such, LCP continued to possess its previous rights and privileges (Business Corporation Law § 906 [b]). In addition, the key to plaintiffs' disqualification motion was not Nixon, Hargrave's representation of the selling shareholders in the sale of their stock to Thomson, but rather Nixon, Hargrave's role as general counsel to LCP over a 50-year period preceding the sale, which included rendering substantial services on at least two of the matters directly involved in the present litigation.

Finally, as Justice Saxe observed in his extensive and well-reasoned opinion, the agreement and plan of merger contained explicit provisions for indemnification of both Thomson *and* the surviving corporation, LCP, in the event of claims or losses, and those parties were thereby entitled to pursue their claims for the contents of the escrow fund against Gosnell, as the representative of the selling shareholders. The agreement and plan of merger contemplated the possibility of adversity between LCP and the selling shareholders, and as it turned out, the selling shareholders' interest in the present litigation is in fact to prevent the plaintiffs from receiving any part of the escrow funds. Nixon, Hargrave thus stands in a position of adversity to its longtime client, LCP, on matters substantially related to those in which Nixon, Hargrave represented LCP prior to the merger. Accordingly, plaintiffs' motion to disqualify the Nixon, Hargrave law firm was properly granted. Concur—Murphy, P. J., Carro, Wallach, Ross and Smith, JJ. *[See,* 151 Misc 2d 249.]