*127
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Central to this appeal, involving a dispute over a corporate acquisition, are two questions.
 
 First,
 
 can long-time counsel for the seller company and its sole shareholder continue to represent the shareholder in the dispute with the buyer? And
 
 second,
 
 who controls the attorney-client privilege as to premerger communications? We conclude that counsel should step aside, and that the buyer controls the privilege as to some, but not all, of the pre-merger communications.
 

 A. Facts
 

 Tekni-Plex, Inc., incorporated under the laws of Delaware in 1967, manufactured and packaged products for the pharmaceutical and other industries. For nearly 20 years, from 1967 to 1986, Tekni-Plex had 18 shareholders and was managed by a five-member Board of Directors. Appellant Tom Y. C. Tang was both a director and a shareholder of the company.
 

 In 1986, Tang became the sole shareholder of Tekni-Plex. From that time until the corporation’s sale in 1994, Tang was also the president, chief executive officer and sole director of Tekni-Plex.
 

 Appellant Meyner and Landis (M&L), a New Jersey law firm, was first retained as Tekni-Plex counsel in 1971. During the
 
 *128
 
 ensuing 23 years, M&L represented Tekni-PIex on various legal matters, including environmental compliance. As the record indicates, M&L in the mid-1980’s assisted Tekni-PIex in securing an environmental permit for the operation of a laminator machine at its Somerville, New Jersey, plant. Similarly, the law firm apparently assisted the company in an investigation by the New Jersey Department of Environmental Protection into Tekni-Plex’s compliance with environmental laws. Additionally, during this period M&L represented Tang individually on several personal matters.
 

 In March 1994, Tang and Tekni-PIex entered into an Agreement and Plan of Merger (the Merger Agreement) with TP Acquisition Company (Acquisition), whereby Tang sold the company to Acquisition for $43 million. M&L represented both Tekni-PIex and Tang personally. The two instant lawsuits grow out of that transaction.
 

 Acquisition was a shell corporation created by the purchasers solely for the acquisition of Tekni-PIex. Under the Merger Agreement, Tekni-PIex merged into Acquisition, with Acquisition the surviving corporation, and Tekni-PIex ceased its separate existence. Tekni-PIex conveyed to Acquisition all of its tangible and intangible assets, rights and liabilities. Acquisition in return paid Tang the purchase price "in complete liquidation of Tekni-PIex,” and all of Tang’s shares in Tekni-PIex — the only shares outstanding — were canceled.
 

 The Merger Agreement contained representations and warranties by Tang concerning environmental matters, including that Tekni-PIex was in full compliance with all applicable environmental laws and possessed all requisite environmental permits. It further provided for indemnification of Acquisition by Tang for any losses incurred by Acquisition as the result of misrepresentation or breach of warranty by either Tang or Tekni-PIex. Acquisition, in turn, agreed to indemnify Tang and Tekni-PIex for any similar losses suffered by them.
 

 Following the transaction, Acquisition changed its name to "Tekni-PIex, Inc.” (new Tekni-PIex). In June 1994, new Tekni-PIex commenced an arbitration against Tang, alleging breach of representations and warranties contained in the Merger Agreement regarding the former Tekni-Plex’s (old Tekni-PIex) compliance with environmental laws.
 

 Among other things, new Tekni-PIex claimed that Tang falsely represented that a laminator machine at the Somerville facility did not emit volatile organic compounds (VOCs).
 
 *129
 
 New management, however, allegedly learned that the machine did indeed emit VOCs into the air. New Tekni-Plex further claimed that the permit for the laminator machine had been obtained on the false premise that it did not emit VOCs and that VOC emissions were therefore not authorized. New Tekni-Plex also contended that Tang and old Tekni-Plex had taken steps to conceal from Acquisition the emission of VOCs at the Somerville facility.
 

 Tang retained M&L to represent him in the arbitration. New Tekni-Plex moved to disqualify the law firm from representing Tang, but the arbitrator concluded that he lacked authority to rule on the motion. New Tekni-Plex then moved by order to show cause in Supreme Court for an order disqualifying M&L. By separate order to show cause in Supreme Court, new Tekni-Plex moved for an order against M&L (1) enjoining the law firm from representing Tang in any action against new Tekni-Plex, (2) enjoining M&L from disclosing to Tang any information obtained from old Tekni-Plex, and (3) ordering M&L to return to new Tekni-Plex all of the files in the law firm’s possession concerning its prior legal representation of old Tekni-Plex. Tang and M&L each cross-moved for orders dismissing the complaints on the ground that there was another action pending in New Jersey.
 
 [1]
 

 Supreme Court concluded that New York was the proper forum for resolution of the disqualification issue and that the arbitrator’s conclusion that he did not have authority to decide the issue was proper. The court held that M&L should be disqualified from representing Tang in the arbitration. It further enjoined M&L from representing Tang in the arbitration, enjoined M&L from disclosing to Tang any information obtained from old Tekni-Plex, and directed M&L to return to new Tekni-Plex all of the files in M&L’s possession concerning its prior representation of old Tekni-Plex. Finally, the court denied both cross motions to dismiss. The Appellate Division affirmed.
 

 We agree with the courts below that, in the circumstances presented, M&L should be disqualified from representing Tang
 
 *130
 
 in the arbitration. As for confidential communications between old Tekni-Plex and M&L generated during the law firm’s prior representation of the corporation on environmental compliance matters, authority to assert the attorney-client privilege passed to the corporation’s successor management. Moreover, because the record fails to establish that M&L also represented Tang individually on these matters, the exception to the privilege for co-clients who subsequently become adversaries in litigation is inapplicable. Thus, the Appellate Division correctly concluded that M&L should be enjoined from disclosing the substance of these communications to Tang and directed the law firm to return the files relating to this representation to new Tekni-Plex.
 

 New Tekni-Plex, however, does not control the attorney-client privilege with regard to discrete communications made by either old Tekni-Plex or Tang individually to M&L concerning the acquisition — a time when old Tekni-Plex and Tang were joined in an adversarial relationship to Acquisition. Consequently, new Tekni-Plex cannot assert the privilege in order to prevent M&L from disclosing the contents of such communications to Tang. Nor is new Tekni-Plex entitled to the law firm’s confidential communications concerning its representation of old Tekni-Plex with regard to the acquisition.
 

 B. The Applicable Ethics Principles
 

 Attorneys owe fiduciary duties of both confidentiality and loyalty to their clients
 
 (see, Solow v Grace & Co.,
 
 83 NY2d 303, 306). The Code of Professional Responsibility thus imposes a continuing obligation on attorneys to protect their clients’ confidences and secrets. Even after representation has concluded, a lawyer may not reveal information confided by a former client, or use such information to the disadvantage of the former client or the advantage of a third party (Code of Professional Responsibility DR 4-101 [B] [22 NYCRR 1200.19 (b)];
 
 see also,
 
 Code of Professional Responsibility DR 5-108 [A] [2] [22 NYCRR 1200.27 (a) (2)]). An attorney, moreover, "must avoid not only the fact, but even the appearance, of representing conflicting interests”
 
 (Cardinale v Golinello,
 
 43 NY2d 288, 296;
 
 see also,
 
 Code of Professional Responsibility Canon 9).
 

 In accordance with these duties, the Code precludes attorneys from representing interests adverse to a former client on matters substantially related to the prior representation. This ethical proscription is set forth in DR 5-108 as follows:
 

 "A Except with the consent of a former client after
 
 *131
 
 full disclosure a lawyer who has represented the former client in a matter shall not:
 

 "1. Thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client” (22 NYCRR 1200.27 [a] [1]).
 

 Under DR 5-108 (A) (1), a party seeking disqualification of its adversary’s lawyer must prove: (1) the existence of a prior attorney-client relationship between the moving party and opposing counsel, (2) that the matters involved in both representations are substantially related, and (3) that the interests of the present client and former client are materially adverse
 
 (see, Solow v Grace & Co.,
 
 83 NY2d at 308). Satisfaction of these three criteria by the moving party gives rise to an irrebuttable presumption of disqualification
 
 (id.,
 
 at 309).
 

 This rule of disqualification fully protects a client’s secrets and confidences by preventing even the possibility that they will subsequently be used against the client in related litigation. This prophylactic measure thus frees clients from apprehension that information imparted in confidence might later be used to their detriment, which, in turn, "fosters the open dialogue between lawyer and client that is deemed essential to effective representation”
 
 (Spectrum Sys. Intl. Corp. v Chemical Bank,
 
 78 NY2d 371, 377).
 

 By mandating disqualification irrespective of any actual detriment — that is, "even when there may not, in fact, be any conflict of interest” — the rule also avoids any suggestion of impropriety on the part of the attorney
 
 (Solow v Grace & Co.,
 
 83 NY2d at 309;
 
 see also, Cardinale v Golinello,
 
 43 NY2d at 296). This not only preserves the client’s expectation of loyalty but also promotes public confidence in the integrity of the Bar. Finally, the bright line rule provides a clear test that is easy to apply, thereby allowing self-enforcement among members of the Bar
 
 (Solow v Grace & Co.,
 
 83 NY2d at 309,
 
 supra).
 

 Notwithstanding these important concerns, we have recognized significant competing interests inherent in attorney disqualification cases. Disqualification of counsel conflicts with the general policy favoring a party’s right to representation by counsel of choice, and it deprives current clients of an attorney familiar with the particular matter
 
 (see, id.,
 
 at 309-310;
 
 S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.,
 
 69 NY2d 437, 443). Disqualification motions, unfortunately, have also
 
 *132
 
 been used as a litigation tactic to gain strategic advantage over an adversary (see,
 
 S & S Hotel Ventures Ltd. Partnership v
 
 777 S.
 
 H. Corp.,
 
 69 NY2d at 443,
 
 supra).
 

 Thus, in assessing whether the moving party has met its burden of satisfying each of the three requirements for disqualification under DR 5-108, courts should avoid mechanical application of blanket rules. Rather, the three pivotal inquiries — whether there exists a prior attorney-client relationship, a substantial relationship between the representations and adversity of interests — require careful appraisal of the interests involved. Only where the movant satisfies all three inquiries does the irrebuttable presumption of disqualification arise
 
 (see, Solow v Grace & Co.,
 
 83 NY2d at 313).
 

 C. Disqualification of Counsel
 

 New Tekni-Plex, as the party seeking M&L’s disqualification, thus has the burden of satisfying the three-pronged test for disqualification by establishing that (1) it assumed the role of M&L’s "former client,” (2) the matters involved in both representations are substantially related, and (3) the interests of M&L’s present client Tang are materially adverse to the interests of the former client. We next consider each of these elements.
 

 1. Is New Tekni-Plex a "Former Client” of M&L? It is undisputed that M&L represented old Tekni-Plex for over 20 years on a variety of legal matters. As counsel to the corporation, the law firm’s duties of confidentiality and loyalty ran to old Tekni-Plex on these matters
 
 (see,
 
 Wolfram, Modern Legal Ethics § 8.3.2, at 421; Code of Professional Responsibility EC 5-18). Concomitantly, the attorney-client privilege attached to any confidential communications that took place between M&L and Tekni-Plex corporate actors in the course of this representation
 
 (see, Commodity Futures Trading Commn. v Weintraub,
 
 471 US 343, 348). The power to assert or waive the privilege, moreover, belonged to the management of old Tekni-Plex, to be exercised by its officers and directors
 
 (see, id.,
 
 at 349;
 
 see also,
 
 Business Corporation Law § 701).
 

 Appellants (Tang and M&L) argue that the purchase of old Tekni-Plex by Acquisition did not transfer the corporation’s attorney-client relationship to the newly formed entity. According to appellants, the transaction effected nothing more than a transfer of assets, with old Tekni-Plex expiring upon the merger, there being no "former client” still in existence. In
 
 *133
 
 support of this contention, appellants point out that, under the Merger Agreement, Acquisition was designated the surviving corporation, old Tekni-Plex explicitly ceased to exist and all of the outstanding shares of stock in old Tekni-Plex were liquidated. They further note that, for tax purposes, the transaction was deemed a sale of assets.
 

 When ownership of a corporation changes hands, whether the attorney-client relationship transfers as well to the new owners turns on the practical consequences rather than the formalities of the particular transaction. In
 
 Commodity Futures Trading Commn. v Weintraub
 
 (471 US 343,
 
 supra),
 
 the Supreme Court held that power to exercise the attorney-client privilege of an insolvent corporation passed to the bankruptcy trustee, who assumed managerial responsibility for operating the debtor company’s business
 
 (see, id.,
 
 at 352-353). In reaching this conclusion, the Court noted with regard to solvent corporations that
 

 "when control of a corporation passes to new management, the authority to assert and waive the corporation’s attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors”
 
 (id.,
 
 at 349).
 

 Weintraub
 
 establishes that, where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company’s operations. It follows that, under such circumstances, the prior attorney-client relationship continues with the newly formed entity.
 

 By contrast, the mere transfer of assets with no attempt to continue the pre-existing operation generally does not transfer the attorney-client relationship. Thus, in
 
 Federal Deposit Ins. Corp. v Amundson
 
 (682 F Supp 981 [D Minn]), the court held that the FDIC, which had purchased the assets of a bank and was appointed receiver for the purpose of liquidation, did not assume the role of former client to the bank’s counsel. In denying the FDIC’s motion to disqualify the bank’s prior attorney from representing the bank’s former officers against the FDIC, the court explained that, unlike
 
 Weintraub,
 
 in the case before it "[t]here [wa]s no thought or effort to reconstitute the entity
 
 *134
 
 or to run it at all” (id., at 987;
 
 see also, Telectronics Proprietary v Medtronic, Inc.,
 
 836 F2d 1332 [Fed Cir] [assignment of patent does not transfer attorney-client relationship];
 
 SMI Indus. Canada v Caelter Indus.,
 
 586 F Supp 808 [ND NY] [purchase of assets does not transfer attorney-client relationship];
 
 Federal Deposit Ins. Corp. v McAtee,
 
 124 FED 662 [D Kan] [same]).
 

 Here, appellants emphasize that old Tekni-Plex merged into Acquisition and ceased to exist as a separate legal entity. That Acquisition, rather than old Tekni-Plex, was designated the surviving corporation, however, is not dispositive. Acquisition was a mere shell corporation, created solely for the purpose of acquiring old Tekni-Plex. Following the merger, the business of old Tekni-Plex remained unchanged, with the same products, clients, suppliers and non-managerial personnel. Indeed, under the Merger Agreement, new Tekni-Plex possessed all of the rights, privileges, liabilities and obligations of old Tekni-Plex, in addition to its assets. Certainly, new Tekni-Plex is entitled to access to any relevant pre-merger legal advice rendered to old Tekni-Plex that it might need to defend against these liabilities or pursue any of these rights.
 

 As a practical matter, then, old Tekni-Plex did not die. To the contrary, the business operations of old Tekni-Plex continued under the new managers. Consequently, control of the attorney-client privilege with respect to any confidential communications between M&L and corporate actors of old Tekni-Plex concerning these operations passed to the management of new Tekni-Plex
 
 (see, Commodity Futures Trading Commn. v Weintraub,
 
 471 US at 349,
 
 supra).
 
 An attorney-client relationship between M&L and new Tekni-Plex necessarily exists.
 

 Thus, the first of the three prongs for disqualification is established: new Tekni-Plex is a "former client” of M&L.
 

 2. Is There a Substantial Relationship Between the Current and Former Representations? M&L previously assisted old Tekni-Plex on at least two matters that are substantially related to its current representation of Tang in the arbitration. First, the record indicates that M&L represented old Tekni-Plex during negotiation of the Merger Agreement. That Agreement contains representations and warranties that are the subject of the arbitration.
 

 Second, the record evidences that M&L counseled old Tekni-Plex concerning environmental compliance and assisted the company in obtaining the permit for the laminator machine at
 
 *135
 
 the Somerville facility. The alleged misrepresentations made by old Tekni-Plex and Tang relate to that permit and the corporation’s compliance with environmental laws.
 

 There is thus a substantial relationship between the current and former representations.
 

 3. Are the Interests of M&L’s Present Client Materially Adverse to the Interests of Its Former Client? The arbitration claims pit Acquisition’s interest as purchaser against Tang’s interest as the selling shareholder. Furthermore, the Merger Agreement provides that Tang is responsible for indemnifying Acquisition for any misrepresentation or breach of warranty made by either Tang
 
 or old Tekni-Plex.
 
 Plainly the parties contemplated a unity of interest between old Tekni-Plex and Tang should a.dispute arise between the buyer and seller regarding the representations and warranties. Thus, to the extent the arbitration relates to the merger negotiations — as opposed to corporate operations — Tang and old Tekni-Plex remain on the same side of the table. The interest of M&L’s former client old Tekni-Plex is aligned with the interest of the law firm’s present client Tang — both in opposition to the buyer.
 

 International Elecs. Corp. v Flanzer
 
 (527 F2d 1288 [2d Cir]), relied on by appellants, supports this analysis. Like new Tekni-Plex, the plaintiffs in
 
 Flanzer
 
 acquired a corporation through a sale and merger transaction. They subsequently filed a complaint against the selling stockholders alleging that misrepresentations were made during the sale negotiations. Plaintiffs then moved to disqualify the selling stockholders’ law firm because counsel for the acquired corporation and the selling stockholders during the acquisition had worked for that firm. The Second Circuit denied the motion to disqualify, explaining that the law firm’s current client (the selling stockholders) was in a position adverse to the buyer, not the merged corporation:
 

 "The law firm and the plaintiffs were on opposite sides of the negotiations which were conducted at arm’s length. The plaintiffs’ attack is now on the
 
 bona fides
 
 of the selling stockholders. These defendants — the selling stockholders — not the buyer, were the clients of the law firm. They have a right to defend themselves as adversaries. * * * The earlier relationship of the law firm to the merged corporation cannot be a source of disqualification in these circumstances, even though a
 
 former
 
 client is surely entitled to protection.”
 
 {Id.,
 
 at 1292.)
 

 
 *136
 
 The dispute here, however, unlike
 
 Flanzer,
 
 goes beyond the merger negotiations. It also involves issues relating to the law firm’s longstanding representation of the acquired corporation on matters arising out of the company’s business operations— namely, M&L’s separate representation of old Tekni-Plex prior to the merger on environmental compliance matters. Any environmental violations will negatively aifect not only the purchasers but also the business interests of the merged corporation. In this regard, the interests of M&L’s current client Tang are adverse to the interests that new Tekni-Plex assumed from old Tekni-Plex
 
 (see, e.g., Thomson U.S. v Gosnell,
 
 151 Misc 2d 249, 256,
 
 affd
 
 181 AD2d 558).
 

 Indeed, M&L’s earlier representation of old Tekni-Plex provided the firm with access to confidential information conveyed by old Tekni-Plex concerning the very environmental compliance matters at issue in the arbitration. M&L’s duty of confidentiality with respect to these communications passed to new Tekni-Plex; yet its current representation of Tang creates the potential for the law firm to use these confidences against new Tekni-Plex in the arbitration.
 

 Under the circumstances, the appearance of impropriety is manifest and the potential conflict of interest apparent. M&L should therefore be disqualified from representing Tang in the arbitration.
 

 D. Confidential Communications
 

 As a final matter, we must determine whether M&L was properly enjoined from revealing to Tang any confidential communications obtained from old Tekni-Plex and whether new Tekni-Plex owns the confidences created during the law firm’s prior representation of old Tekni-Plex. For analytical purposes, the attorney-client communications must be separated into two categories: general business communications and those relating to the merger negotiations.
 

 1. General Business Communications. As explained above, the management of new Tekni-Plex continues the business operations of the pre-merger entity. Control of the attorney-client privilege with regard to confidential communications arising out of those operations — including any pre-merger communications between old Tekni-Plex and M&L relating to the company’s environmental compliance — thus passed to the management of new Tekni-Plex
 
 (see, Commodity Futures Trading Commn. v Weintraub,
 
 471 US at 349,
 
 supra).
 
 As a result,
 
 *137
 
 new Tekni-Plex now has the authority to assert the attorney-client privilege to preclude M&L from disclosing the contents of these confidential communications to Tang. Likewise, ownership of the law firm’s files regarding its pre-merger representation of old Tekni-Plex on environmental compliance matters passed to the management of new Tekni-Plex. This conclusion comports with new Tekni-Plex’s right to invoke the pre-merger attorney-client relationship should it have to prosecute or defend against third-party suits involving the assets, rights or liabilities that it assumed from old Tekni-Plex.
 

 Appellants urge that because Tang and old Tekni-Plex were co-clients of M&L, none of the communications made by corporate actors to the law firm are confidential from Tang. Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences concerning the joint matter will remain secret from each other, and those confidential communications are not within the privilege in subsequent adverse proceedings between the co-clients (see, Wolfram, Modern Legal Ethics § 6.4.8, at 274-275). While M&L jointly represented Tang and old Tekni-Plex during the acquisition, with respect to the environmental compliance matters the record before us establishes only M&L’s representation of the corporation.
 

 We note that some courts have held that, in the case of a close corporation, corporate representation may be individual representation as well
 
 (see, e.g., Rosman v Shapiro,
 
 653 F Supp 1441 [SD NY];
 
 In re Brownstein,
 
 288 Ore 83, 87, 602 P2d 655, 656-657;
 
 but see, Cohen v Acorn Intl.,
 
 921 F Supp 1062, 1064 [SD NY] ["(o)n several occasions this Court has held that a law firm does not represent the shareholder of a corporation, even a close corporation, simply by virtue of its representation of the corporation itself”]). Here, the record indicates that at least some of M&L’s representation of old Tekni-Plex on the environmental matters at issue took place before Tang became the corporation’s sole shareholder and manager. Whether corporate counsel also functioned as Tang’s individual attorney on the environmental matters involved factual questions not addressed by the trial court or Appellate Division. In this particular case there is an insufficient record from which we can
 
 *138
 
 conclude that M&L jointly represented the corporation and Tang individually on matters other than the. merger.
 
 [2]
 

 2. Communications Relating to the Merger Negotiations. As to the other category of attorney-client communications between old Tekni-Plex and M&L — those relating to the merger transaction — new Tekni-Plex did not succeed to old Tekni-Plex’s right to control the attorney-client privilege. New Tekni-Plex’s misrepresentation and breach of warranty claims do not derive from the rights it inherited from old Tekni-Plex but from the rights retained by the buyer, Acquisition, with respect to the transaction. Under the Merger Agreement, moreover, the rights of old Tekni-Plex with regard to disputes arising from the merger transaction remain independent from— and, indeed, adverse to — the rights of the buyer. During this dispute stemming from the merger transaction, then, new Tekni-Plex cannot both pursue the rights of the buyer (Acquisition) and simultaneously assume the attorney-client rights that the buyer’s adversary (old Tekni-Plex) retained regarding the transaction.
 

 This conclusion is especially compelling here, where at the time of the acquisition the seller corporation was solely owned and managed by one individual, Tang. “As corporate stock ownership is concentrated into fewer and fewer hands, the distinction between corporate entity and shareholders begins to blur” and "[i]n the case of a sole-owner corporation, they may merge” (Wolfram, Modern Legal Ethics § 8.3.2, at 421). To allow new Tekni-Plex access to the confidences conveyed by the seller company to its counsel during the negotiations would, in the circumstances presented, be the equivalent of turning over to the buyer all of the privileged communications of the seller concerning the very transaction at issue. The parties here, moreover, recognized the community between the selling shareholder and his corporation and expressly provided that it be preserved in any subsequent dispute regarding the acquisition.
 

 Indeed, to grant new Tekni-Plex control over the attorney-client privilege as to communications concerning the merger transaction would thwart, rather than promote, the purposes underlying the privilege. The attorney-client privilege encour
 
 *139
 
 ages "full and frank communication between attorneys and their clients and thereby promoters] broader public interests in the observance of law and administration of justice”
 
 (Upjohn Co. v United States,
 
 449 US 383, 389;
 
 see also, People v Mitchell,
 
 58 NY2d 368, 373). Where the parties to a corporate acquisition agree that in any subsequent dispute arising out of the transaction the interests of the buyer will be pitted against the interests of the sold corporation, corporate actors should not have to worry that their privileged communications with counsel concerning the negotiations might be available to the buyer for use against the sold corporation in any ensuing litigation. Such concern would significantly chill attorney-client communication during the transaction.
 

 Thus, while generally "parties who negotiate a corporate acquisition should expect that the privileges of the acquired corporation would be incidents of the sale”
 
 (Medcom Holding Co. v Baxter Travenol Labs.,
 
 689 F Supp 841, 842 [ND Ill]), the agreement between the parties here contemplated that, in any dispute arising from the merger transaction, the rights of the acquired corporation, old Tekni-Plex, relating to the transaction would remain independent from and adverse to the rights of new Tekni-Plex.
 

 In light of the facts of this particular transaction and the structure of the underlying agreement, new Tekni-Plex is without authority to assert the attorney-client privilege to preclude M&L from revealing to Tang the contents of communications conveyed by old Tekni-Plex concerning the merger transaction. Similarly, new Tekni-Plex does not control M&L’s files relating to its prior representation of old Tekni-Plex during the acquisition. Of course, nothing in our decision today prevents new Tekni-Plex from obtaining through the normal course of discovery any non-confidential documents, or confidential documents for which the privilege has been waived, to which it is entitled.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified, without costs, in accordance with the opinion herein, and, as so modified, affirmed.
 

 Judges Simons, Titone, Bellacos a, Smith, Levine and Ciparick concur.
 

 Order, insofar as appealed from, modified, etc.
 

 [1]
 

 . Tang had commenced an action against new Tekni-Plex in New Jersey Superior Court seeking a declaration that (1) the arbitrator had authority to decide the disqualification issue, or (2) he had a right to be represented by M&L in the arbitration, and (3) as sole shareholder and director of old Tekni-Plex, he owned and controlled the attorney-client privilege attaching to communications between M&L and old Tekni-Plex. The New Jersey court indicated that it would not rule on this application until the motions pending in New York were resolved.
 

 [2]
 

 . We underscore that we resolve only those attorney-client issues that are presented by the merger dispute before us. In any other matter Tang is of course not foreclosed from making the requisite showing of joint representation or alternative basis for access to attorney-client communications.