691 A.2d 889

DONALD OSWALL, PLAINTIFF, v. TEKNI-PLEX, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1997—Decided April 17, 1997.

Before Judges MICHELS, MUIR, Jr. and KLEINER.

*Edwin C. Landis, Jr.*, argued the cause for appellant Tom Y.C. Tang (*Meyner and Landis*, attorneys; *Mr. Landis*, of counsel and on the brief; *Cynthia Brooks*, on the brief).

*Thaddeus R. Maciag* argued the cause for respondent Tekni–Plex, Inc. (*Maciag & Associates, P.C.*, attorneys; *Mr. Maciag*, of counsel and on the brief; *Karen Cornyn Formisano*, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Plaintiff Donald Oswall, a former employee of defendant, Tekni–Plex, Inc., instituted a breach of contract action against defendant. After filing its answer and a counterclaim, defendant served its former president, Tom Y.C. Tang, with a subpoena to appear at a deposition on December 14, 1995. Tang's attorney, Edwin C. Landis, Jr., a partner in the law firm Meyner and Landis, advised defendant's counsel that Tang would appear provided that he, Landis, was permitted to accompany him. Defendant's counsel objected and filed a motion to compel Tang's appearance and to disqualify Landis and his law firm from representing Tang. The motion judge ordered that: (1) Tang appear at the deposition; and (2) the deposition be conducted in a court conference room adjoining the judge's chambers. The judge decided that if Tang proved to be a hostile witness at the deposition, she would then consider defendant's motion to disqualify Landis.

On February 9, 1996, Tang, accompanied by Landis, appeared at the deposition, which was not completed on that date.[1] Afterward, defendant ordered an expedited transcript of the partially completed deposition and renewed its motion to disqualify Landis. Defendant's counsel provided the motion judge with a copy of the deposition transcript and cited nineteen questions to which Landis had objected and to which he had directed Tang not to answer.

---

[1] The deposition could not be completed that day and all counsel agreed that the deposition would be completed at a future date to be scheduled thereafter.

Defendant also sought, by separate motion, leave to name Tang as a third-party defendant in the Oswall litigation.[2]

The motion judge: (1) denied defendant's motion to name Tang as a third-party defendant; (2) declared that Landis' firm would be disqualified from representing Tang at the conclusion of his deposition; (3) ordered that Tang appear at that deposition on a date to be scheduled, either with new counsel or without representation; (4) denied Landis' application for a stay pending a motion for leave to appeal to this court; and (5) denied plaintiff's cross-motion for summary judgment. On an emergent application by Tang, we granted leave to appeal to consider the propriety of the disqualification of Tang's counsel and entered an order staying all further proceedings in the underlying litigation pending disposition of the interlocutory appeal. We now affirm.

I

Tekni-Plex, Inc., which was formed in 1967, produces packaging products for the pharmaceutical and other industries. Tang became the sole shareholder of Tekni–Plex in 1986. At that time, Tang was also president and chief operating officer of the company.

The law firm Meyner and Landis (M & L) represented Tekni–Plex between 1971 and 1994. During those twenty-three years, M & L's representation included a variety of legal matters including litigation and general corporate matters. During the same period, the law firm also represented Tang personally in real estate matters. In 1986, M & L represented both Tang and the old Tekni–Plex in a leveraged buy-out of the other shareholders of Tekni–Plex.

Tang sold Tekni–Plex on March 18, 1994. The sale occurred as follows:

---

[2] Additionally, plaintiff filed a cross-motion seeking summary judgment.

1.  The TP Acquisition Company, a shell acquisition company, was formed for the purpose of merging with Tekni–Plex;

2.  Pursuant to an "Agreement and Plan of Merger," TP Acquisition Company purchased all of the shares of Tekni–Plex, Inc. from Mr. Tang—for over 43 million dollars.

3.  On the closing date, March 18, 1994, TP Acquisition Company became Tekni–Plex, Inc.

4.  A certificate of merger was executed prior to the closing date, and the surviving company assumed all of the "tangible and intangible assets, properties and rights" of Tekni–Plex, Inc.

M & L represented Tekni–Plex throughout the negotiations and merger.

Following the sale, the shareholders of the acquisition company became the owners of the new Tekni–Plex, and the directors and officers of the acquisition company became the directors and officers of the new Tekni–Plex. The new Tekni–Plex, using its predecessor's manufacturing facilities, continued to conduct the same business and manufactured the same products as the old Tekni–Plex. Additionally, the new Tekni–Plex inherited all of the contractual rights and liabilities of the old Tekni–Plex. While new Tekni–Plex employed most of the same people, there were some key changes.

The merger agreement contained approximately thirty-three pages of representations and warranties to which Tang attested as a selling shareholder and as president of Tekni–Plex. It also contained a provision that all disputes arising from the agreement would be subject to arbitration in New York.

### A.

As a result of an alleged misrepresentation in the merger agreement, new Tekni–Plex filed a claim with the American Arbitration Association. When M & L filed an appearance on behalf of Tang, Tekni–Plex's new counsel sought to disqualify the law firm because the firm had represented Tekni–Plex for over twenty years. Tekni–Plex filed two actions in the New York Supreme Court. The first sought to enjoin M & L from representing Tang in any action against Tekni–Plex; the second sought

to disqualify M & L from representing Tang in the then pending arbitration.

Judge Cahn of the New York Supreme Court issued two orders: one enjoined M & L from representing Tang in the arbitration; the other enjoined M & L from disclosing to Tang any information obtained from Tekni–Plex and ordered M & L to return all Tekni–Plex files in its possession.

The New York Appellate Division granted a stay of the arbitration hearing pending its review of Judge Cahn's ruling. After hearing oral argument, the New York Appellate Division affirmed Judge Cahn's ruling, holding that M & L's former representation of Tekni–Plex precluded it from representing Tang in the arbitration dispute. The New York Appellate Division also rejected Tang's claim that he held the attorney-client privilege, concluding that:

> Disqualification is warranted because a substantial relationship exists between the subject of counsel's prior representation and the instant matter, and a corporation's right to assert its attorney-client privilege cannot be waived by former principles.

> [*Tekni-Plex, Inc. v. Meyner & Landis*, 220 *A.D.*2d 326, 632 *N.Y.S.*2d 565, 566 (1995), *aff'd as modified*, 89 *N.Y.*2d 123, 651 *N.Y.S.*2d 954, 674 *N.E.*2d 663 (1996) (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 *U.S.* 343, 349, 105 *S.Ct.* 1986, 1991, 85 *L.Ed.*2d 372, 378–79 (1985)).]

Tang then appealed this decision to New York's highest court, the Court of Appeals. In its opinion, the New York Court of Appeals, per Chief Judge Kaye, unanimously affirmed Judge Cahn's ruling on disqualification. The court applied a three-factor test based on New York case law in determining that M & L were properly disqualified:

> New Tekni–Plex, as the party seeking M & L's disqualification, thus has the burden of satisfying the three-pronged test for disqualification by establishing that (1) it assumed the role of M & L's "former client," (2) the matters involved in both representations are substantially related, and (3) the interests of M & L's present client Tang are materially adverse to the interests of the former client.

> [*Tekni-Plex v. Meyner & Landis*, 89 *N.Y.*2d 123, 651 *N.Y.S.*2d 954, 674 *N.E.*2d 663, 667–68 (1996).]

## II

The subject of the litigation in this appeal differs from the issue presented in the New York arbitration. Here, plaintiff, a former employee of Tekni–Plex from 1978 through 1984, alleges that Tekni–Plex breached a contract that it executed on December 12, 1991. That contract was signed by Tang in his capacity as president of Tekni–Plex. Tang contends that M & L did not represent him or the corporation during contract negotiations with plaintiff. The contract issue is whether Tekni–Plex breached its obligation to pay plaintiff $6,500 per month as part of a non-competition agreement. Specifically, Tekni–Plex agreed to pay plaintiff $6,000 per month, later modified to $6,500 per month, and provide plaintiff's insurance benefits for forty-one months. In return, plaintiff agreed not to compete with Tekni–Plex "with any styrofoam products in the marketplace." Plaintiff filed suit when Tekni–Plex discontinued these monthly payments. In its answer to plaintiff's complaint, Tekni–Plex denies any contractual obligation, and in a counterclaim it contends that: (1) plaintiff competed with it in the production of polystyrene; and (2) plaintiff defrauded it by filing false expense account reports.

When issue was joined, defendant served Tang with a subpoena *duces tecum* to appear at a deposition. As noted, Judge Cooper disqualified M & L from representing Tang for the second day of that deposition. In her ruling, Judge Cooper stated, in part:

All right, [the Oswall contract] is subject to arbitration in New York in the case with respect to Mr. Tang. And his problem has to be resolved in the New York arbitration which is mandatory and agreed by the parties. He should not even be in this case as a party. This is strictly a contract case. The issue being whether he had the authority to enter this contract, what the contract says, whether there was a breach of contract, and so on and so forth.

Oswall was not bound by the arbitration clause. Therefore, there is no question that he can proceed in this state. *This leaves Landis out as an attorney for Tang because of the New York decision that precluded him from that, and forces him to go back to arbitration in New York.* But, on the deposition of Mr. Tang as a fact witness the defendant is definitely precluded from questioning him on anything

other than the contract. *I'm not going to use this as a vehicle for discovery for New York; I think that's totally inappropriate.*

Judge Cooper continued:

I'm not precluding Mr. Tang from being deposed, but if, my understanding is that the questions that were objected to did not go directly to this contract issue, but instead were aimed at getting answers relevant to the New York action, which is totally inappropriate in New Jersey. *Since he's now become a hostile witness Mr. Landis is no longer going to represent him* ....

Tang then sought emergent relief from the order disqualifying M & L. We granted Tang leave to appeal. In his appeal, Tang contends that: (1) M & L cannot be disqualified because defendant is not its former client; (2) the motion judge erred when she determined that Tang was hostile and adverse to defendant; and (3) an attorney's representation against a successor corporation is not representation adverse to a "former client" under *RPC* 1.9. Alternatively, Tang contends that: (1) M & L should not be disqualified because Tang's interests are not "materially adverse" to defendant's interests in the defense of plaintiff's breach of contract claim; (2) plaintiff's contract was not shown to be "substantially related" to M & L's representation of Tang and the former Tekni–Plex; (3) the motion judge made errors in her findings that are either plain error requiring reversal or which cumulatively require reversal.

## III

The *Rules of Professional Conduct* define conflicts of interest with regards to former clients as follows:

(a) A lawyer who has represented a client in a matter shall not thereafter:

(1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client; or

(2) use information relating to the representation to the disadvantage of the former client except as RPC 1.6 would permit with respect to a client or when the information has become generally known.

(b) The provisions of *RPC* 1.7(c) are applicable as well to situations covered by this rule.

[*RPC* 1.9.]

Tang contends that the prohibition in *RPC* 1.9 does not apply to M & L because: (1) the "new" Tekni–Plex is not their former client; (2) M & L did not represent Tekni–Plex in the contract negotiation with plaintiff; and (3) M & L is not representing another client in the *same or substantially related matter*, within the ambit of *RPC* 1.9(a)(1).

In *Reardon v. Marlayne, Inc.*, 83 *N.J.* 460, 416 *A.*2d 852 (1980), the Supreme Court stated:

> It has been noted that "the Code of Professional Responsibility is not designed for Holmes' proverbial 'bad man' who wants to know just how many corners he may cut, how close to the line he may play, without running into trouble with the law." Rather, "it is drawn for the 'good man' as a beacon to assist him in navigating an ethical course through the sometimes murky waters of professional conduct."
>
> [*Id.* at 469, 416 *A.*2d 852 (quoting *General Motors Corp. v. City of New York*, 501 *F.*2d 639, 649 (2d Cir.1974)) (citation omitted).]

■ The appearance of impropriety is enough to foster the disqualification of an attorney. *See Dewey v. R.J. Reynolds Tobacco Co.*, 109 *N.J.* 201, 215, 536 *A.*2d 243 (1988). In *Dewey,* the Court stated:

> We conclude that under RPC 1.9 a mandatory disqualification is no longer required. We reach that result from RPC 1.9(b)'s incorporation of RPC 1.7(c)'s "appearance of impropriety" analysis. Under that analysis the question to be resolved is whether "an ordinary knowledgeable citizen acquainted with the facts" could conclude that [an attorney] represented [a putative former client] within the intendment of RPC 1.9, and that [the attorney's] representation of [the new client] in the same lawsuit would pose a "substantial risk of disservice either to the public interest or the interest of one of the clients."
>
> [109 *N.J.* at 215–16 (quoting *RPC* 1.7(c)(2)).]

Under this test, which is a way of analyzing the malleable "appearance of impropriety" standard, M & L should be disqualified. An ordinary, knowledgeable citizen, acquainted with the facts, *could* conclude that "new" Tekni–Plex is the same as "old" Tekni–Plex, which inexorably leads to the conclusion that M & L represented Tekni–Plex within the "intendment of *RPC* 1.9." Furthermore, that same ordinary, knowledgeable citizen *could* conclude that M & L's representation of Tang presents a "substantial risk of

disservice" to Tekni–Plex. *See Dewey, supra,* 109 *N.J.* at 216, 536 *A.*2d 243.

■ Here, there is a pervasive appearance of impropriety that is not mitigated by the fact that Tang is not a party to this litigation. As Judge Cooper noted, the underlying facts surrounding plaintiff's contract are subject to litigation in New York between Tang and Tekni–Plex.

■ In reviewing a trial court's conclusions in a non-jury civil action, an appellate court is bound to grant substantial deference to the trial court. *See Rova Farms Resort, Inc. v. Investors Ins. Co. of America,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974). A trial court's conclusions should not be disturbed unless the Appellate Division is "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." *Id.* at 484, 323 *A.*2d 495 (quoting *Fagliarone v. Township of North Bergen,* 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div.), *certif. denied,* 40 *N.J.* 221, 191 *A.*2d 61 (1963)).

Granting the deference that is due to a trial judge under *Rova Farms, supra,* Judge Cooper's determination that Tang was a hostile witness is clearly supported by the record. Tang, under the direction of his counsel, refused to answer nineteen questions on the first day of his deposition. Our review of the unanswered questions indicate that each question was relevant to the pending litigation and was not, as Tang's counsel contends, designed to conduct discovery for the New York arbitration. The questions were framed to elicit information to demonstrate that Tang, as president of Tekni–Plex, was acting *ultra vires* when he negotiated the contract with plaintiff. Tang's refusal to answer any question designed to elicit evidence that he acted *ultra vires* clearly demonstrates the hostility that led Judge Cooper to disqualify M & L.

As noted by Judge Cooper, any dispute between Tang and Tekni–Plex about the plaintiff's contract with Tekni–Plex must,

pursuant to the merger agreement, be arbitrated in New York. For that reason, plaintiff's motion to join Tang as an additional defendant in this litigation was properly denied. The potential for future arbitration arising from plaintiff's claim was a sufficient reason to disqualify M & L from representing Tang at a deposition in the discovery phase of the pending litigation.

Defendant contends that Tang acted *ultra vires* in entering into the contract with plaintiff. But for the merger agreement, Tang would be a third-party defendant or an additional defendant in plaintiff's breach of contract action. As such, Tang's interests and defendant's interests are plainly hostile and are materially adverse. One of the contractual obligations that was transferred to defendant as a result of its merger with the "old" Tekni–Plex was the contract with plaintiff. M & L negotiated that merger agreement. It may not represent a party whose interest is or may be adverse to the interests of the successor corporation.

Defendant contends that Judge Cooper erred in reaching the conclusion that Tang was hostile without conducting an evidentiary hearing. We disagree. The judge permitted the deposition to be conducted intending to address the issue of hostility when and if hostility was demonstrated. Defendant's counsel was at liberty to interrupt the deposition to seek judicial review. Defendant's counsel elected instead to obtain an expedited transcript of the partially completed deposition and to present that transcript to the judge as an exhibit in support of defendant's application to disqualify M & L. The deposition transcript was sufficient evidence upon which to predicate the disqualification motion. An additional evidentiary hearing was unnecessary, and the judge did not err in reaching her decision.

In addition to the appearance of impropriety, there is support for the proposition that a successor corporation retains the attorney-client privilege of its predecessor. As noted by the New York Court of Appeals:

When ownership of a corporation changes hands, whether the attorney-client relationship transfers as well to the new owners turns on the practical conse-

quences rather than the formalities of the particular transaction. In *Commodity Futures Trading Commission v. Weintraub,* the Supreme Court held that power to exercise the attorney-client privilege of an insolvent corporation passed to the bankruptcy trustee, who assumed managerial responsibility for operating the debtor company's business.

[*Tekni-Plex v. Meyner & Landis, supra,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 959, 674 N.E.2d at 668 (citation omitted).]

The court relied on *Commodity Futures Trading Commission v. Weintraub,* 471 *U.S.* 343, 349, 105 *S.Ct.* 1986, 1991, 85 *L.Ed.*2d 372, 378–79 (1985), in which the Supreme Court stated that:

[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

[*Ibid.*]

Regardless of the intricacies of corporate law and the formalities of the merger transaction that gave rise to "new" Tekni–Plex, it appears that, for the purposes of the disqualification analysis, Meyner & Landis represented "new" and "old" Tekni–Plex. In fact, the distinction between the two corporate entities is insignificant. As noted, the corporation produces the same products, under the same name, in the same facilities, and inherited all of the liabilities and rights of the former corporation.

## IV

Tang contends by way of a reply brief that his "[d]ue process right to the counsel of his choice is paramount." (citing *Texas Catastrophe Property Ins. Ass'n v. Morales,* 975 *F.*2d 1178, 1181 (5th Cir.1992), *cert. denied,* 507 *U.S.* 1018, 113 *S.Ct.* 1815, 123 *L.Ed.*2d 446 (1993); *McCuin v. Texas Power & Light Co.,* 714 *F.*2d 1255, 1262–65 (5th Cir.1983)).

In *Dewey, supra,* the Court disqualified an attorney from representing Client B in an action against Client A. The attorney had previously worked at a law firm that represented Client A. The

court, however, allowed the attorney's new firm to continue representing Client B. The Court determined that the attorney had not personally represented Client A while at the other law firm. In allowing the attorney's new firm to continue to represent Client B, the Court relied on the client's right to counsel of choice. Because there was no appearance of impropriety and because the attorney had not, in fact, represented Client A at his old law firm, the new firm was allowed to represent Client B.

The Supreme Court noted in *Dewey, supra,* that:

> We recognize that a person's right to retain counsel of his or her choice is limited in that "there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." *Reardon v. Marlayne, supra,* 83 *N.J.* at 477, 416 *A.*2d 852; *State v. Lucarello,* 135 *N.J.Super.* 347, 353, 343 *A.*2d 465 (App.Div.), *aff'd o.b.,* 69 *N.J.* 31, 350 *A.*2d 226 (1975).
>
> [*Dewey, supra,* 109 *N.J.* at 218, 536 *A.*2d 243.]

The Court also created a mechanism for the determination of disqualification issues. Under the Court's system, "[s]uch a motion should ordinarily be decided on the affidavits and documentary evidence submitted, and an evidentiary hearing should be held only when the court cannot with confidence decide the issue on the basis of the information contained in those papers." *Id.* at 222, 536 *A.*2d 243. The Court then "repeat[ed] [its] admonition" that "only in the most unusual case will the client's right prevail." *Ibid.* The Court also concluded that:

> We cannot conceive of any situation in which the side-switching attorney or his new firm would be permitted to continue representation if, unlike the situation before us, the attorney had in fact *actually* represented the former client *or had acquired confidential information concerning that client's affairs.*
>
> [*Dewey, supra,* 109 *N.J.* at 220, 536 *A.*2d 243 (second emphasis added).]

This is exactly the case here. M & L, through its twenty-three years of representing Tekni–Plex and in representing Tekni–Plex in its merger with TP Acquisition Company, no doubt acquired confidential information concerning Tekni–Plex's affairs. M & L was properly disqualified from representing Tang at the discovery deposition in this litigation.

Affirmed.