[1 NYS3d 58]

MATTHEW R. MAYERS, Respondent, v STONE CASTLE PARTNERS, LLC, et al., Appellants. (Action No. 1.)

STONE CASTLE PARTNERS, LLC, Appellant, v MATTHEW MAYERS et al., Respondents. (Action No. 2.)

First Department, January 8, 2015

## APPEARANCES OF COUNSEL

*Quinn Emanuel Urquhart & Sullivan, LLP*, New York City (*Sanford I. Weisburst, Kevin S. Reed* and *David M. Cooper* of counsel), and *Morrison Cohen LLP*, New York City (*Danielle C. Lesser* of counsel), for appellants.

*Jaffe & Asher, LLP*, New York City (*Marshall T. Potashner* and *Michael L. Ihrig, II* of counsel), for respondents.

## OPINION OF THE COURT

SAXE, J.

Stone Castle Partners, LLC (SCP) and its affiliates challenge a ruling disqualifying their chosen counsel. We hold that counsel's disqualification was not required under these circumstances.

SCP, defendant in action No. 1 and plaintiff in action No. 2, manages more than $5 billion in assets. Matthew R. Mayers, plaintiff in action No. 1 and defendant in action No. 2, as well as George Shilowitz and Joshua S. Siegel, defendants in action No. 1, were members and "Management Investors" with SCP; their rights and obligations were defined under SCP's Fifth Amended and Restated Limited Liability Company Agreement (LLC Agreement). In 2009, through a subsidiary, SCP acquired a supermajority position in the preferred shares of Tropic CDO IV (Tropic IV), a collateralized debt obligation investment. Under Tropic IV's governing documents, the owner of a supermajority of its preferred shares was entitled to direct the CDO's trustee to sell the underlying collateral. Relying on that authority, SCP attempted to bring about the sale of Tropic IV's collateral at deeply discounted prices in exchange for a "consent payment," so called because it is paid to holders of the preferred shares by the collateral buyers in exchange for their consenting to the collateral's sale. However, Tropic IV's other investors, including Hildene Capital Management, a holder of Tropic IV notes and a client of SCP, protested that SCP's actions constituted a scheme to defraud them by stripping Tropic IV's collateral in exchange for a bribe. The trustee, Wells Fargo, when presented with SCP's directive to sell and the other investors' objections to the sale, commenced a federal interpleader action on November 2, 2009 to resolve the issue. SCP caused its subsidiaries to withdraw their consent to the buyer's offer for the

Tropic IV collateral, and the prospective buyer eventually withdrew its offer.

By the fall of 2010, SCP had decided to avoid the expressed concerns of antagonized investors and important clients by arranging for its subsidiaries to divest themselves of their holdings of Tropic IV preferred shares, which totaled 2 million preferred shares. In an auction conducted by the SCP subsidiaries in November 2010, Mayers, through his wholly owned entity RRWT, purchased those 2 million preferred shares of Tropic IV.

While it is Mayers's position that SCP must have known that he was the shares' purchaser, it is SCP's position that the purchase was made secretly and without its knowledge, that, having given up its involvement with Tropic IV equity in the interest of maintaining its investors' trust, it would not knowingly have permitted one of its managers to engage in the very conduct that had undermined the investors' trust.

Thereafter, Mayers continued to purchase Tropic IV preferred shares in order to acquire a supermajority. In early 2011 he formed TP Investments LLC to hold those Tropic IV preferred shares, and by June 2012 he had acquired control of a supermajority of Tropic IV preferred shares, allowing him to carry out the plan that SCP had attempted and then abandoned.

In November 2012, through RRWT and TP Investments and under the assumed name "Kricket Hound," Mayers solicited a $750,000 consent payment from a prospective purchaser of certain securities held by Tropic IV as collateral, and sent a "Direction to Sell" letter to the trustee. Although this communication did not contain Mayers's name, it included his personal telephone number. The Direction to Sell was provided by the trustee to interested parties, including holders of Tropic IV notes, one of whom forwarded it to Joshua Siegel of SCP, with an inquiry regarding whether SCP was connected to the Direction to Sell.

By December 5, 2012, having learned of Mayers's attempt to arrange the sale of Tropic IV collateral in exchange for a $750,000 consent payment, SCP retained Quinn Emanuel Urquhart & Sullivan, LLP, which it had used in other legal matters, to represent SCP against Mayers.

By letter dated January 22, 2013, SCP demanded that Mayers sell his interests in Tropic IV preferred shares, and Mayers complied within three weeks, allegedly without gain. Neverthe-

less, on January 29, 2013, SCP terminated Mayers for cause on the grounds that he had personally engaged in transactions adverse to SCP's interests, had concealed those activities from SCP, and had failed to answer honestly SCP's questions about his disputed activities.

Mayers commenced an action on February 6, 2013, alleging that he was wrongfully terminated without cause, and seeking injunctive and declaratory relief, as well as damages. On November 25, 2013, SCP, represented by Quinn Emanuel, commenced an action against Mayers, claiming that Mayers engaged in illegal schemes while employed at SCP.

Mayers's motion to disqualify Quinn Emanuel as counsel for SCP arose out of a telephone call Mayers made to Quinn Emanuel attorney Jonathan Pickhardt in May 2011, after SCP's prospective sale of Tropic IV collateral had fallen through, in which Mayers allegedly informed Pickhardt that he was calling in his personal capacity and not in connection with his employment or association with SCP. According to Mayers's complaint, he informed Pickhardt of his company's present ownership of Tropic IV preferred shares and his future plans regarding the CDO's preferred shares, and asked if Pickhardt would represent RRWT against Wells Fargo based on the trustee's failure to follow the instructions in the Direction to Sell.

It is undisputed that Pickhardt declined the representation. However, Pickhardt admittedly discussed the Mayers telephone call with Quinn Emanuel attorney Kevin S. Reed, who was lead counsel for SCP.

In seeking Quinn Emanuel's disqualification, Mayers claimed that Pickhardt had received confidential information from him during their consultation and that, after SCP retained the firm, the firm used that information in SCP's action against him. Mayers argued that the disclosure of his communications to Pickhardt regarding his purpose in the Tropic IV investment went to the heart of the SCP's counter-suit asserting that Mayers had breached his duties under the LLC Agreement, since the communication divulged a scenario that Mayers "was trying to go around the back of [SCP]." Mayers also contended that without the information in his communications to Pickhardt, Quinn Emanuel might not have come up with the strategy, in SCP's action against him, of subpoenaing for deposition certain people that he dealt with.

A movant seeking disqualification of an opponent's counsel bears a heavy burden (*Ullmann-Schneider v Lacher & Lovell-*

*Taylor PC*, 110 AD3d 469 [1st Dept 2013]). A party has a right to be represented by counsel of its choice, and any restrictions on that right "must be carefully scrutinized" (*id.* at 469-470, quoting *S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.*, 69 NY2d 437, 443 [1987]). This right is to be balanced against a potential client's right to have confidential disclosures made to a prospective attorney subject to the protections afforded by an attorney's fiduciary obligation to keep confidential information secret (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.18; *see also Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d 631, 637 [1998]; *Sullivan v Cangelosi*, 84 AD3d 1486 [3d Dept 2011]). Courts should also examine whether a motion to disqualify, made during ongoing litigation, is made for tactical purposes, such as to delay litigation and deprive an opponent of quality representation (*see e.g. Solow v Grace & Co.*, 83 NY2d 303, 310 [1994]). The decision of whether to grant a motion to disqualify rests in the discretion of the motion court (*see Macy's Inc. v J.C. Penny Corp., Inc.*, 107 AD3d 616 [1st Dept 2013]).

██ Issues relating to the prospective client relationship based on events that occurred after April 2009 are governed by rule 1.18 of the Rules of Professional Conduct (22 NYCRR 1200.0), rather than the repealed Code of Professional Responsibility DR 5-108 (22 NYCRR 1200.27). Cases from this Court addressing conduct that occurred prior to the April 2009 enactment of the new rules are not controlling here (*see e.g. Justinian Capital SPC v WestLB AG, N.Y. Branch*, 90 AD3d 585 [1st Dept 2011]; *Bank Hapoalim B.M. v WestLB AG*, 82 AD3d 433 [1st Dept 2011]).

The former Code of Professional Responsibility did not have a specific rule that governed disclosures during a prospective client consultation. Rule 1.18 of the Rules of Professional Conduct fills that void. It provides:

> "(a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a 'prospective client.'

> "(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

"(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter *if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter*, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d)" (emphasis added).

Thus, where a prospective client consults an attorney who ultimately represents a party adverse to the prospective client in matters that are substantially related to the consultation, the prospective client is entitled to obtain the attorney's disqualification only if it is shown that the information related in the consultation "could be significantly harmful" to him or her in the same or a substantially related matter (*id.* rule 1.18 [c]).

■ Initially, we reject the contention of SCP and its affiliates that the May 2011 telephone interview did not involve confidential information. Rule 1.6 (a) of the new Rules of Professional Conduct (22 NYCRR 1200.0) defines "[c]onfidential information" as "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." Notwithstanding SCP's observation that Mayers ultimately disclosed the same information in his June 2013 complaint, the telephone communication between Mayers and Pickhardt at least fits within subdivision (b), since the information imparted was likely to be detrimental to Mayers.

■ Nevertheless, disqualification is not warranted because the conveyed information did not have the potential to be significantly harmful to Mayers in the matter from which he seeks to disqualify counsel. The affidavits and the parties' respective pleadings establish that Mayers's plans with regard to the Tropic IV investment had been made generally known, and Mayers even attests that SCP, Siegel and Shilowitz were cognizant of his Tropic IV investment purchase via his wholly owned entity (at the SCP auction of Tropic IV preferred shares), that they knew of his investment strategy, and that he had of-

fered them an opportunity to participate in the investment. Mayers did not meet the heavy burden he bore as a prospective client seeking to disqualify Quinn Emanuel, a year into the litigation, from representing the SCP parties.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about March 28, 2014, which granted Matthew R. Mayers's motion to disqualify Quinn Emanuel Urquhart & Sullivan, LLP as counsel for the SCP parties should be reversed, on the law and the facts, without costs, and the motion denied. The appeal from the order, same court and Justice, entered on or about April 24, 2014, which denied the motion of the SCP parties for reargument, should be dismissed, without costs, as taken from a nonappealable order.

FRIEDMAN, J.P., ACOSTA, MANZANET-DANIELS and GISCHE, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 28, 2014, reversed; appeal from order, same court and Justice, entered on or about April 24, 2014, dismissed, without costs.