[1 NYS3d 761]

JOHN E. BERNACKI, Plaintiff, v JULIE M. BERNACKI, Defendant.

Supreme Court, Monroe County, January 14, 2015

## APPEARANCES OF COUNSEL

*Fero & Ingersoll, LLP*, Rochester (*Matthew J. Fero* of counsel), for plaintiff.

*Davidson Fink LLP*, Rochester (*Gregory J. Mott* of counsel), for defendant.

## OPINION OF THE COURT

KENNETH R. FISHER, J.

This is plaintiff's motion for an order disqualifying defendant's counsel, Gregory J. Mott, Esq., on the grounds of conflict of interest as defined in Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.18, the so-called prospective client rule. The motion is palpably without merit.

> "Rule 1.18(c) of the New York Rules of Professional Conduct . . . prohibits a lawyer who possesses *confidential information* learned during a consultation with a prospective client from representing a party with interests *materially adverse* to those of a prospective client in the *same or a substantially related matter* if the attorney received information from the prospective client that could be *significantly harmful* to that person in the matter, unless [certain exceptions not here present are applicable]." (NY St Bar Assn Comm on Prof Ethics Op 960 [2013].)

As the elements of interests "materially adverse" and the "same or a substantially related matter" are clearly met on this application and are not disputed, the court turns to the other elements of the motion which are "disputed."

When considering the putatively "disputed" elements of the motion, guidance from a case decided last week by the First Department must be kept in focus.

> "A party has a right to be represented by counsel of its choice, and any restrictions on that right must be carefully scrutinized. This right is to be balanced against a potential client's right to have confidential disclosures made to a prospective attorney subject to the protections afforded by an attorney's fiduciary obligation to keep confidential information secret (*see* Rules of Professional Conduct [22 NYCRR

1200.0] rule 1.18 . . . )." (*Mayers v Stone Castle Partners, LLC*, 126 AD3d 1, 6 [2015] [internal quotation marks and citations omitted].)

"[T]he prospective client is entitled to obtain the attorney's disqualification only if it is shown that the information related in the consultation 'could be significantly harmful' to him or her in the same or a substantially related matter (*id.* rule 1.18 [c])." (126 AD3d at 7.) "Courts should also examine whether a motion to disqualify, made during ongoing litigation, is made for tactical purposes, such as to delay litigation and deprive an opponent of quality representation." (126 AD3d at 6.)

In this case, Mr. Mott was not retained by plaintiff and plaintiff does not assert that he ever consulted with or spoke to Mr. Mott. Plaintiff asserts that, after contacting defense counsel's law firm, he "received a call from one of Mr. Mott's administrators or paralegal which amounted to an intake interview of sorts," wherein he, without elaboration or specification, "exchanged specific and detailed information with Mr. Mott's staff some of which has the potential to be substantially harmful to my position in the current divorce matter." (Aff of John E. Bernacki, Dec. 1, 2014, ¶ 3.) The staff member in Mr. Mott's office is not named by plaintiff. Nor does plaintiff provide the court with any information, or even a general description, of the nature of the information exchanged. Plaintiff nevertheless contends in conclusory fashion that this information has the potential to be substantially harmful to his position.

Defendant presents the affidavit of Patricia Antes, Mr. Mott's legal assistant. She avers that she never spoke to John Bernacki, but took a voice mail from him regarding an inquiry as to legal representation by Mr. Mott. She avers that she subsequently left two voice mails with Mr. Bernacki, the first stating that Mr. Mott could not speak to him because Mr. Mott represented defendant, and the second voice mail, left on Mr. Mott's instructions, informed Mr. Bernacki that Mr. Mott represented a litigant in a matter before plaintiff in Pittsford Town Court. Ms. Antes avers that she never spoke to plaintiff, never conducted any intake interview, and the only information she received from him was his name and telephone number.

Plaintiff's motion must be denied. There is no question here that the parties' interests are adverse. However, in order to disqualify Mr. Mott, Mr. Mott must have received confidential

information and have "received information from the prospective client that could be significantly harmful to that person in the matter." (NY St Bar Assn Comm on Prof Ethics Op 960 [2013] [emphasis omitted].) No information is presented in this motion that would permit the court to conclude that the information allegedly revealed was of the type referred to in rule 1.18. Plaintiff's reference to the information as "confidential," without more, is insufficient. (*Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d 631, 638 [1998] ["Allowing a party seeking disqualification to meet its burden by generalized assertions of 'access to confidences and secrets' would both make it difficult, if not impossible, to test those assertions and encourage the strategic use of such motions. . . . While a movant need not actually spell out the claimed secrets and confidences in order to prevail, it must at a minimum provide the motion court with information sufficient to determine whether there exists a reasonable probability that DR 5-108 (A) (2) would be violated"]; *Sullivan v Cangelosi*, 84 AD3d 1486, 1487 [3d Dept 2011] ["defendant failed to establish that he shared any information with Carroll during the telephone conversation that could be considered confidential"].) Similarly, the court cannot conclude that the information "could be significantly harmful" to plaintiff in this matter as the court is told no more about the information other than it was "specific and detailed." (*Gustafson v Dippert*, 68 AD3d 1678, 1679 [4th Dept 2009] ["Supreme Court properly refused to conduct a hearing on the cross motion inasmuch as 'mere conclusory assertions that there is a conflict of interest are insufficient to warrant a hearing' "], quoting *Olmoz v Town of Fishkill*, 258 AD2d 447, 448 [2d Dept 1999]; *Mayers v Stone Castle Partners, LLC*, 126 AD3d 1 [2015] [disqualification is not warranted because the conveyed information did not have the potential to be significantly harmful].)

Attached to Mr. Fero's affidavit at exhibit B, is a letter to Mr. Mott from Mr. Fero, dated November 10, 2014, wherein Mr. Fero alleges that plaintiff revealed "financial information" to Mr. Mott's office. Bernacki does not make such a claim in his supporting affidavit, however. Mr. Fero has no personal knowledge of this matter and this letter has no evidentiary or substantive value in determining the issue here. Similarly, Mr. Fero's assertion at oral argument that there were four separate contacts with defense counsel's firm has no support in the moving papers and cannot be considered.

But there is an even more overriding consideration present here. Rule 1.18 incorporates an element of good faith, which plaintiff's application on its face shows is not present. Since *In re American Airlines, Inc.* (972 F2d 605, 613 [5th Cir 1992]), courts have carved out of the prospective client doctrine situations in which parties moving for disqualification "were motivated primarily by a desire not to secure representation from [the lawyer in question], but to ensure that [the lawyer] would not, or could not, represent [the current client]." The American Law Institute's Restatement (Third) of the Law Governing Lawyers § 15, Reporter's Note, Comment *c* (2000) incorporates this element of good faith in its prospective client rule. (*Id.* ["(o)n the relevance of a prospective client's disclosure allegedly intended to *produce* disqualification" (emphasis supplied)], citing *American Airlines*.) So does, emphatically, New York's rule 1.18 (e), which exempts any prospective client from the protection of the rule who "communicates information unilaterally to a lawyer" without fairly expecting it to result in a retainer (para 1), and one who "communicates with a lawyer for the purpose of disqualifying the lawyer from handling a materially adverse representation on the same or a substantially related matter" (para 2 [such a person "is not a prospective client within the meaning of paragraph (a)"]).[1] The New York State Bar Association approved comment to rule 1.18 adds that "[a] lawyer may not encourage or induce a person to communicate with a lawyer or lawyers for that improper

---

**1.** As well summarized by a commentator explaining the difference between New York's version of rule 1.18 and that of the American Bar Association approved version:

> "In this regard, New York is at the forefront (instead of lagging behind) in terms of addressing what has long been deplored as an unethical practice, yet one which is not strictly prohibited by the Model Rules: a client shopping her case around town to preclude all the qualified lawyers from taking her opponent's case. This is especially relevant in family law matters, or in smaller communities where there are fewer lawyers available to handle client matters. It is an oft-told story—a husband and wife are divorcing, and one of them has an initial consultation with all of the best divorce lawyers in town, thus conflicting those lawyers out from representing the other spouse in the divorce. This practice will not be permitted under the new version of New York's Rules of Professional Conduct." (Lydia Arnold Turnipseed, 2007-2008 Survey of New York Law, *Professional Responsibility*, 59 Syracuse L Rev 987, 990 [2009].)

purpose." (Rule 1.18 Comment [2], citing rules 3.1 [b] [2]; 4.4, 8.4 [a].)[2]

Yet that is precisely what plaintiff did in this matter. On September 23, 2014, in an email to his wife entitled, "Attorneys Which Whom I Have Sought Legal Advice," plaintiff listed 12 of the most experienced matrimonial attorneys in the county, including Mr. Mott, who, plaintiff opined to his wife, would be unavailable to her in the action ("I believe that each attorney on the list would conflict themselves out or my attorney would move to have them replaced as I have given them confidential information"). Plaintiff proceeded in that email to advise his wife of certain problems with other attorneys, and ultimately advised her to contact "my friend," Justice Dollinger's law clerk for "advice and guidance."

The brazenness of this is astonishing, but it establishes beyond peradventure plaintiff's purpose in contacting these experienced matrimonial attorneys, viz., that he contacted them "for the purpose of disqualifying the lawyer from handling" his wife's defense of the action. (Rule 1.18 [e] [2].) Indeed, if the affidavits submitted by defendant are credited, leaving voice mail messages on a law firm's telephone recorder, purportedly containing confidential information, is just the sort of "unilateral[ ]" communication sought to be addressed by the carve-out in rule 1.18 (e) (1).

Accordingly, plaintiff's motion is denied. (*Martin v Martin*, 224 AD2d 597 [2d Dept 1996]; *Burton v Burton*, 139 AD2d 554, 554-555 [2d Dept 1988] [contrary result where financial information imparted during an actual two way discussion and where "there is no indication that the motion to disqualify was made for mere tactical reasons or that the defendant deliberately brought about the present predicament"].) I would only add that the conclusory nature of plaintiff's showing in his motion papers wholly fails to establish, nor does it tend to show, that "the conveyed information . . . ha[d] the potential to be significantly harmful to [plaintiff] in the matter from which he seeks to disqualify counsel." (*Mayers v Stone Castle Partners, LLC*, 126 AD3d at 6.)

---

2. It is to be pointed out that plaintiff is an experienced lawyer, and a respected town justice, and must be assumed to be intimately familiar with the consequences of consulting with multiple matrimonial attorneys in the fashion disclosed by his email to his wife.