Garry, J.
 

 Appeal from an order of the Supreme Court (Platkin, J.), entered October 13, 2016 in Albany County, which denied defendant’s motion to disqualify counsel for third-party defendants LeadingAge New York Services, Inc. and Leading-Age New York.
 

 Plaintiff is a group self-insured trust that was formed to provide workers’ compensation coverage to employees of member entities. Defendant, a home health care provider, was a member of plaintiff from 2000 to 2008. In 2010, plaintiff commenced this action for breach of contract and unjust enrichment, seeking recovery of unpaid assessments for claims from defendant’s employees. In July 2013, defendant commenced a third-party action asserting claims, as pertinent here, of fraudulent inducement and negligent misrepresentation against third-party defendants LeadingAge New York Services, Inc. and LeadingAge New York (hereinafter collectively referred to as LeadingAge). These claims relate to defendant’s decisions to become a member of plaintiff and to continue its membership thereafter.
 
 [1]
 
 Peckar and Abramson, PC. (hereinafter the firm) commenced representing LeadingAge in this third-party action later in 2013. In August 2016, defendant moved to disqualify the firm, asserting that the firm had represented defendant from 1997 to 2008 on employment and labor matters that included workers’ compensation coverage. Supreme Court denied the motion, and defendant appeals.
 

 “[A] party seeking disqualification of its adversary’s lawyer must prove: (1) the existence of a prior attorney-client relationship between the moving party and opposing counsel, (2) that the matters involved in both representations are substantially related, and (3) that the interests of the present client and former client are materially adverse” (Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123, 131 [1996]; see Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.9 [a]). In resolving such a motion, a court must balance “the vital interest in avoiding even the appearance of impropriety [against] concern for a party’s right to representation by counsel of choice and danger that such motions can become tactical derailment weapons for strategic advantage in litigation” (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 638 [1998] [internal quotation marks and citation omitted]; see Mayers v Stone Castle Partners, LLC, 126 AD3d 1, 5-6 [2015]). Here, the parties agree that there was a prior attorney-client relationship between defendant and the firm and that the interests of defendant and LeadingAge are materially in conflict. They disagree as to whether the scope of the firm’s prior representation of defendant is substantially related to its current representation of LeadingAge or, in the alternative, whether there is “a reasonable probability” that confidential information imparted by defendant to the firm may be used or disclosed in its representation of LeadingAge (Jamaica Pub. Serv. Co. v AIU Ins. Co, 92 NY2d at 637; accord Waehner v Northwest Bay Partners, Ltd., 30 AD3d 799, 800 [2006]). Upon review, we agree with Supreme Court that defendant did not meet its “heavy burden” to establish that LeadingAge should be deprived of the counsel of its choice (Kelly v Paulsen, 145 AD3d 1398, 1399 [2016] [internal quotation marks and citation omitted]).
 

 Defendant’s motion was supported by the affidavit of the chief executive officer of defendant’s parent company (hereinafter the CEO). Initially, the CEO asserted that he had been unaware of the firm’s representation of LeadingAge until 2016, when he saw the firm identified as counsel to LeadingAge in one of the prior appeal decisions from this Court. The CEO further asserted that the firm had previously represented defendant throughout the time period when defendant was a member of plaintiff, and that the firm had advised defendant on labor and employment issues: “including workers [’] compensation insurance recommendations due to the skyrocketing cost of workers[’] compensation coverage.” He asserted that defendant had provided the firm with confidential financial, payroll and tax information and information related to defendant’s finances and management and employment practices, including documents “for legal advice regarding efforts to reduce workers’ compensation claims costs.” One attorney of the firm, whom the CEO described as “a close and confidential advisor,” had provided the primary representation of defendant from 1997 until his death in 2005. The CEO asserted that this attorney had offered advice upon labor and employment issues as well as a wide variety of other business matters. According to the CEO, several other attorneys at the firm provided representation to defendant on labor and employment issues thereafter, between 2005 and 2008, and defendant and the firm “continued to discuss their relationship and continued representation” until 2010.
 

 The CEO asserted in general fashion that the firm was aware of defendant’s membership in plaintiff and of the “private considerations underpinning its decision to join [plaintiff],” alleging that the topic of defendant’s membership in plaintiff was “revisited” several times in verbal conversations with the attorney who passed away. Specifically, the CEO stated that he and the deceased attorney discussed defendant’s workers’ compensation coverage during “breakouts” in collective bargaining sessions, and that the cost of coverage was a significant factor in such negotiations. However, these allegations fell short of claims that the deceased attorney ever provided advice to defendant about membership in plaintiff or any other group self-insured trust, nor did the CEO assert that defendant provided the firm with any confidential information specifically related to these matters. Defendant further submitted a list of invoices that it had paid to the firm and a sample invoice from June 2004 detailing time spent by the deceased attorney in representing defendant. The listed invoices did not reveal the nature of any of the underlying matters, and the sample invoice indicated only that it pertained to labor representation. Neither document made any reference to workers’ compensation issues, group self-insured trusts, plaintiff, or defendant’s membership in plaintiff.
 
 [2]
 

 In opposition, two attorneys at the firm—the managing partner of the firm’s labor relations and employment law department and another partner in that department—averred by affidavit that they had represented defendant between 2005 and 2007 on such labor matters as collective bargaining negotiations, union grievances and matters before the National Labor Relations Board. They asserted that their representation of defendant ended in 2007 and that the firm had only minimal contact with defendant thereafter. Each asserted that neither he nor the firm had advised defendant on workers’ compensation matters or made recommendations regarding workers’ compensation coverage, that defendant never provided the firm with any information related to its membership in plaintiff and that the firm did not advise defendant about this membership. They also asserted that, as attorneys, it was not their practice to offer advice or recommendations related to workers’ compensation coverage to any client, that they did not offer such advice or recommendations to defendant and that the firm does not practice workers’ compensation law.
 

 “[M]ore than mere generalized assertions are required to justify disqualification” (Waehner v Northwest Bay Partners, Ltd., 30 AD3d at 800 [internal quotation marks and citation omitted]; see Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d at 638). Upon review, we agree with Supreme Court that the CEO’s “vague and conclusory” assertions regarding verbal conversations with a now-deceased attorney about the cost of workers’ compensation coverage were inadequate to establish a substantial relationship between the firm’s prior representation of defendant in general labor and employment matters and the matters involved in its current representation of LeadingAge. Likewise, defendant failed to establish that it is reasonably probable that any confidential information will be used or disclosed in the current litigation. In view of the general and unsubstantiated nature of defendant’s allegations, we find no abuse of discretion in the court’s determination (see Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d at 638; Nicola v Barrett, 43 AD3d 583, 584-585 [2007]; Waehner v Northwest Bay Partners, Ltd., 30 AD3d at 800; Gaspar v Hollrock Poured Concrete, Inc., 7 AD3d 871, 872 [2004]; Hunkins v Lake Placid Vacation Corp., 120 AD2d 199, 202-203 [1986]).
 

 Peters, P.J., Clark, Aarons and Pritzker, JJ., concur.
 

 Ordered that the order is affirmed, with costs.
 

 [1]
 

 . The action and third-party action have been before this Court in several previous appeals (156 AD3d 99 [2017]; 155 AD3d 1208 [2017]; 141 AD3d 785 [2016]).
 

 [2]
 

 . Defendant also submitted billing records pertaining to the firm’s representation of an affiliated entity named People Care of New Jersey, Inc., which is not a party in this action. These records likewise made no reference to plaintiff, defendant’s membership in plaintiff or workers’ compensation coverage.