J. Bruce Forbush, Respondent, v Dianne W. Forbush, Appellant.

Fourth Department, March 1, 1985

### APPEARANCES OF COUNSEL

*Ellis, Kustell & Mullenhoff* (*Carl B. Kustell* of counsel), for appellant.

*Musacchio & Pyle* (*Ange, Birzon, Gordon, Rosa & Zakia* [*Paul Ivan Birzon* of counsel]), for respondent.

### OPINION OF THE COURT

Denman, J.

The issue presented is whether an attorney who has represented both husband and wife in various legal transactions and who represents the husband in matters involving closely held corporations which may be the subject of equitable distribution should be disqualified from representing the husband in a matrimonial action.

This motion to disqualify was brought by defendant in a complex and bitterly contested matrimonial action commenced

by J. Bruce Forbush against Dianne Forbush on September 21, 1982. The complaint seeks dissolution of the parties' 30-year marriage and equitable distribution of marital property on grounds of cruel and inhuman treatment and constructive abandonment. Defendant opposes the divorce but, in the event a divorce is granted, has counterclaimed for maintenance and equitable distribution (Domestic Relations Law § 236, part B). Two prior appeals concerning discovery matters and the award of attorney, accounting and appraisal fees have been decided by this court (*Forbush v Forbush,* 97 AD2d 945; 97 AD2d 946). The various motions made by both parties during the course of this litigation are too numerous to detail. Suffice it to say that each party has spared no effort or left any legal stone unturned to prevent a possible advantage by the other.

The facts prompting the instant motion did not come to light until April 9, 1984 when, during the course of an examination before trial, plaintiff's attorney, Roger Pyle, attempted to question defendant about a meeting which had taken place between him and defendant in his office on August 17, 1982. The following exchange took place among Pyle, attorney for plaintiff, Carl Kustell, attorney for defendant, and the defendant:

"Q. Now, Mrs. Forbush, between August 7th, 1982 and September 22nd, 1982 —

"A. Would you go over those dates again, not so fast?

"Q. August 7th, 1982, and September 22nd, 1982, —

"A. Is that the issuance of the Summons?

"Q. That was the date the Summons was issued. Did you call me and ask to meet with me with reference to your marital situation?

"A. I came down —

"Q. Just yes or no?

"A. No, I'll answer the question in my own way.

"MR. KUSTELL: Wait a minute. If she had a conversation with you as an attorney?

"MR. PYLE: That's what I want to get, the other thing, in that I advised her that I was representing her husband.

"THE WITNESS: You did not advise me of that, Roger. You're a liar.

"MR. KUSTELL: Let's not go into conversations. That would be privileged.

"THE WITNESS: You said you would not ever represent Bruce in a Divorce Action.

"MR. PYLE: That's not true, Mrs. Forbush.

"MR. KUSTELL: Let's not get into this.

"THE WITNESS: It's my word against yours. I'm very sorry.

"MR. KUSTELL: Mr. Pyle had no right to talk to you and thereafter represent your husband.

"THE WITNESS: I came to you because I thought you were Bruce's friend and wanted to help him.

"MR. KUSTELL: Let's not get into this now.

"THE WITNESS: And this is the way you're helping him.

"MR. KUSTELL: We're not going to get into conversations with him.

"MR. PYLE: I want to get the contents of the conversations.

"MR. KUSTELL: If you're going to get into your own conversations with her, I think it's privileged and not the subject of this proceeding.

"THE WITNESS: You should be ashamed of yourself. You're an animal.

"MR. KUSTELL: If that's true, you should disqualify yourself as attorney for Mr. Forbush.

"MR. PYLE: Except I seriously dispute Mrs. Forbush's claim.

"MR. KUSTELL: If that is the case, you're getting into a lot of problems."

In her affidavit in support of the motion which was brought shortly thereafter, defendant states that she had never mentioned the meeting with Pyle to her attorney because she did not realize its significance until her attorney apprised her of the possible impropriety. She now seeks to prohibit Pyle from representing her husband and from revealing the content of her conversations with him. She alleges that Pyle has been the Forbush family attorney for many years and has represented her husband on many transactions involving several corporations of which he is the sole shareholder and in connection with a railroad in which he is a minority shareholder. Because of that relationship she states that, when her husband left her, she contacted Pyle to discuss her marital situation in the hope that he would urge her husband to get professional help and thereby save their marriage.

Although defendant's account of the meeting differs substantially from that of Pyle in several important respects, it is clear from the notes which Pyle took during the meeting that Dianne

Forbush discussed subjects of a confidential nature related to the matrimonial action including Bruce Forbush's relationship with another woman; defendant's concern about Bruce's physical and emotional health; her fears that he was under considerable stress because of business problems and was going through a "male mid-life crisis".

At the hearing on the disqualification motion, defendant and Pyle gave differing accounts of the manner in which Pyle represented himself to defendant during the meeting. Dianne admitted that Pyle had informed her that he was her husband's lawyer but insisted that he told her that he had not discussed a divorce with her husband, that he was not a matrimonial lawyer and would not represent her husband in a matrimonial action. Pyle denied that and disputed defendant's testimony that the conversation lasted for approximately 40 minutes and that he had questioned defendant about various details regarding her relationship with her husband. Pyle testified that he informed defendant, prior to the meeting, not to come to see him because he was her husband's lawyer, but that she arrived at his office without an appointment and he saw her as a courtesy. Although Pyle did not deny the substance of the conversation, he stated that it lasted no more than 10 minutes. He did not recall asking defendant any questions about her relationship with her husband and stated that he told her that he could not keep the conversation confidential. Dianne testified that she was seeking Pyle's disqualification because she had gone to him for help and she felt that he had taken advantage of the situation to find out things to use against her.

At the close of the hearing, defendant's motion was denied. Defendant appeals on three grounds: (1) that Pyle should be precluded from representing plaintiff because of his former representation of both plaintiff and defendant in matters pertaining to the matrimonial action; (2) that Pyle's consultation with defendant immediately prior to instituting the matrimonial action and his failure to disclose that fact to defendant's counsel creates the appearance of professional impropriety; and (3) that Pyle should be precluded from representing plaintiff because he may be called as a witness at trial due to his representation of plaintiff and his father when plaintiff acquired sole ownership of several family-owned businesses.

For reasons which follow, we reverse the order and grant defendant's motion to disqualify Roger Pyle from representing plaintiff in the matrimonial action. Our analysis begins with an examination of the nature of the relationship between Dianne

Forbush and Pyle. It is undisputed that Pyle has served for a number of years as the Forbush family attorney. In addition to representing the family corporations, on two occasions he drafted wills for Dianne and Bruce Forbush, which presumably made him privy to the parties' assets. He also represented the Forbushes in rescuing their daughter from a religious cult and in subsequent habeas corpus proceedings brought against them. Thus, it is clear that a professional relationship existed between Pyle and Dianne Forbush in which Pyle had undertaken to advise her with respect to her legal affairs and those of her family.

By his complaint plaintiff has put in issue defendant's dissipation of marital assets and her undue influence over the children of the marriage. Bitterly contested is the extent to which certain assets, particularly those of the Forbush Lumber Company in which plaintiff is now the sole shareholder, are marital assets for the purpose of equitable distribution. Further, plaintiff's one-third ownership of a railroad is subject to equitable distribution and Pyle represented plaintiff for many years on transactions involving the railroad. Pyle's prior representation of defendant presumably made him privy to confidential information which impinges on these contested matters.

The rule governing disqualification of an attorney under these circumstances is set forth in *Greene v Greene* (47 NY2d 447, 453) as follows: "An attorney traditionally has been prohibited from representing a party in a lawsuit where an opposing party is the lawyer's former client (e.g., *Hatch v Fogerty,* 40 How Pr 492, 503). Underlying this rule is the notion that an attorney, as part of his fiduciary obligation, owes a continuing duty to a former client — broader in scope than the attorney-client evidentiary privilege — not to reveal confidences learned in the course of the professional relationship (see *Watson v Watson,* 171 Misc 175, 176). To obtain disqualification of the attorney, the former client need not show that confidential information necessarily will be disclosed in the course of the litigation; rather, a reasonable probability of disclosure should suffice (see *Sheffield v State Bar of California,* 22 Cal 2d 627; *Galbraith v State Bar of California,* 218 Cal 329)." (*See also,* Propriety and effect of attorney representing interest adverse to that of former client, Ann., 52 ALR2d 1243.) In order to obtain disqualification of the attorney, the former client need not prove that the attorney did in fact obtain confidential information during the course of the former representation so long as the subject matter is related (*see, Cardinale v Golinello,* 43 NY2d 288, 296). Additionally, the court may infer

the "reasonable probability of disclosure of confidences" from the nature of the situation itself (see, *Flaum v Birnbaum,* 107 AD2d 1087).

A review of cases from other jurisdictions indicates the universality of the rule. The Supreme Court of Connecticut granted a wife's motion to disqualify her husband's attorney under circumstances similar to those before us (see, *Cleland v Cleland,* 35 Conn S 215, 404 A2d 905). The court held that an attorney's prior representation of the wife in the drafting of a will was substantially related to his representation of the husband in a matrimonial action where the financial status of the parties was in dispute.

In *Woods v Superior Ct.* (149 Cal App 3d 931), the California Court of Appeal granted wife's motion to disqualify husband's attorney where he had been the attorney for the family business which was the focus of the matrimonial action. The court held that it was not necessary for the wife to show that he had in fact obtained confidential information to be used against her, only that there was the appearance that he might.

In *Matter of McCaffrey* (275 Ore 23, 549 P2d 666), an attorney was disciplined for representing a wife in a matrimonial action when he had formerly represented the husband in corporate matters and in a personal injury action.

The Committee on Professional Ethics of the New York State Bar Association has held, in a similar context, that an attorney who previously represented both husband and wife in a criminal matter could not thereafter represent the wife in a matrimonial proceeding, reasoning that the lawyer may have been privy to confidential information concerning the husband's financial situation and be in a position to use information derived from the former representation against the husband in the matrimonial action (4 Opns Committee on Professional Ethics: NYSBA No. 329 [1974]).

It is apparent from the situation here that these dangers are exacerbated when an attorney who has represented the family unit subsequently represents one of the parties in a matrimonial action. In his treatise on legal ethics, Henry Drinker observed: "[w]hen the interest of clients diverge and become antagonistic, their lawyer must be absolutely impartial between them, which, unless they both or all desire him to represent them both or all, usually means that he may represent none of them" (Drinker, Legal Ethics, at 112). That the attorney views himself primarily as the attorney for only one of the parties does not diminish the nature of his obligation to the other party. Moreover, we find

that the manner in which Pyle attempted to capitalize on the August 17 conversation after the parties' separation was highly improper. Although Pyle informed defendant at that time that he was her husband's attorney, he was not relieved of the duty which he owed defendant as a former client. "Irrespective of any actual detriment", defendant was "entitled to freedom from apprehension and to certainty that [her] interest[s] [would] not be prejudiced" (*Cardinale v Golinello,* 43 NY2d 288, 296, *supra*).

In view of that duty, Pyle's subsequent use of the conversation both in framing the complaint and in questioning defendant at her examination before trial was highly improper. It is of no moment that Pyle had not yet been formally retained to represent Bruce Forbush in the dissolution proceeding. He considered himself to be Bruce Forbush's attorney and admitted discussing Bruce's matrimonial problems with him several days in advance of the meeting with defendant. As the attorney who represented plaintiff in his business affairs, Pyle should have anticipated that, in the event of a divorce, he would be consulted with respect to the financial aspects of the property distribution. It was thus improper for Pyle to confer with defendant and to take notes of their conversation relating to her matrimonial problems. " 'The proper procedure for the lawyer representing a party seeking a divorce and having occasion to communicate with the adverse party not represented by counsel, would be to limit the communication as nearly possible to a statement of the proposed action, and a recommendation that the adverse party should consult independent counsel' " (4 Opns Committee on Professional Ethics: NYSBA No. 478 [1978] quoting Committee on Professional Ethics and Grievances, ABA No. 58 [1931]).

We have considered defendant's contention that the possibility that attorney Pyle will be called to testify at trial should preclude him from representing plaintiff (Code of Professional Responsibility, DR 5-102). However, in view of our disposition, we need not reach that issue. Finally, there is no merit to plaintiff's argument that the motion should be barred by laches (*see, Emle Indus. v Patentex, Inc.,* 478 F2d 562).

Accordingly, the order should be reversed and defendant's motion to disqualify granted.

HANCOCK, JR., J. P., CALLAHAN, DOERR and SCHNEPP, JJ., concur.

Order unanimously reversed, on the law and facts, with costs, and defendant's motion granted.