[851 NYS2d 19]

CHRISTINE PELLEGRINO, Respondent-Appellant, v OPPENHEIMER & Co., INC., Formerly Known as FAHNESTOCK & Co., INC., et al., Appellants-Respondents. ANDREA BERTOLINE, Respondent-Appellant, v OPPENHEIMER & Co., INC., Formerly Known as FAHNESTOCK & Co., INC., et al., Appellants-Respondents. IRINA ALTER, Respondent-Appellant, v OPPENHEIMER & Co., INC., Formerly Known as FAHNESTOCK & Co., INC., et al., Appellants-Respondents.

First Department, January 22, 2008

### APPEARANCES OF COUNSEL

*Patterson Belknap Webb & Tyler LLP,* New York City (*Ellen M. Martin* and *Richard O. Jackson* of counsel), for appellants-respondents.

*Storch Amini & Munves P.C.,* New York City (*Russell Bogart* and *Steven G. Storch* of counsel), for respondents-appellants.

### OPINION OF THE COURT

LIPPMAN, P.J.

These are three separate actions for employment discrimination and sexual harassment brought by former employees of defendant Oppenheimer (formerly known as Fahnestock & Co., Inc.) against both the corporation and its general counsel, Eric Shames. Plaintiff Irina Alter began working at Oppenheimer in March 2002 as a paralegal. She attended law school in the evening during her employment and was admitted to the bar in December 2004. Plaintiffs, Christine Pellegrino and Andrea Bertoline, were likewise employees in Oppenheimer's legal department.

Alter's employment was terminated in September of 2003. Shortly thereafter, she commenced this action alleging sexual harassment and discrimination in violation of the New York State and New York City Human Rights Laws. Pellegrino and

Bertoline filed separate actions apparently based on similar allegations, but their complaints are not included in the record.

Oppenheimer moved to dismiss the complaint or, in the alternative, to disqualify plaintiff's counsel in Alter's case. In the *Bertoline* and *Pellegrino* actions, Oppenheimer moved only to disqualify plaintiffs' counsel. Defendants asserted that plaintiffs' counsel, Storch Amini & Munves, had acquired knowledge of Oppenheimer confidences through both Alter and Oppenheimer in-house counsel, Evelyn Bukchin.

At some point in early 2003, Alter had approached Bukchin, a young attorney working in Oppenheimer's legal department, to complain about sexual harassment by Shames. Before speaking with Bukchin, Alter asked her to keep the substance of their conversation within the confines of the attorney-client privilege. As a result, when Alter testified at her first examination before trial, she stated that she believed she and Bukchin had an attorney-client relationship and declined to answer several questions based on that asserted privilege. However, at Alter's second deposition, conducted after defendants moved to disqualify Storch Amini, she no longer asserted the privilege for questions pertaining to communications between herself and Bukchin.

Bukchin testified at her own deposition that, although she consented to Alter's proposal of an attorney-client relationship, she thought that Alter came to her for advice in general—not specifically for legal advice—and she believed that she never actually provided Alter legal advice. Bukchin indicated that she and Alter attempted to classify the substance of their communications as confidential because they were afraid they would be fired. Bukchin also testified that she had reported complaints against Shames through the company's human resources channels on more than one occasion to no avail, and that she was told that the president of the company was already aware of the situation. Further, she was advised that all sexual harassment complaints must go through Shames, as general counsel.

At one point, due to the alleged pervasive discriminatory environment at Oppenheimer, Alter and Bukchin along with another Oppenheimer attorney, Kathryn Gostinger, went to see an employment discrimination attorney at Storch Amini. The apparent purpose of the meeting was to inquire as to how they could notify their employer about the difficult situation in the office in an effective manner without suffering adverse employment consequences. They were exploring the possibility of send-

ing an anonymous complaint letter to the company. Alter testified that, at the time of the meeting, she had no intention of bringing a claim against Oppenheimer. Bukchin testified that she consulted with Storch Amini because she wanted to know what further steps she should take to address the hostile work environment. She did not allege that she was a victim of harassment. Bukchin also related that Storch Amini advised her at the meeting that she had some responsibility in the department and could potentially face liability since employees were reporting their complaints to her.

Alter also testified that soon after she was fired, Bukchin telephoned her and told her that she was upset with Shames's decision and that "it was not the right thing to do." Alter and Bukchin remained friendly and continued to keep in touch. Notably, Bukchin related to Alter the substance of conversations she had with Shames subsequent to Alter's termination. For example, Bukchin told Alter that Shames revealed that the lawsuits were a source of embarrassment and were taking an emotional toll on him. Bukchin also told Alter that Shames had indicated that he believed Alter's claim had the most merit of the pending lawsuits.

In each case, defendants' disqualification motion was denied at Supreme Court. In *Alter*, the court noted that Bukchin consulted Storch Amini seeking legal advice for herself and that she did not ultimately retain the firm. The court also found that Storch Amini did not gain any improper advantage from its interaction with Bukchin and that Bukchin neither represented Shames nor received privileged information from him.

In *Pellegrino*, Supreme Court agreed that Bukchin did not receive privileged information from Shames, found no attorney-client relationship between Alter and Bukchin and determined that no privileged information had been provided to Storch Amini. Finally, in *Bertoline*, Supreme Court followed the decisions in the two related matters. The three actions have been consolidated for purposes of this appeal.

## Discussion

The Code of Professional Responsibility prohibits a lawyer from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client" (DR 5-108 [a] [1] [22 NYCRR 1200.27 (a) (1)]) or, with certain exceptions, from "[using] any confidences or secrets of the former client"

(DR 5-108 [a] [2] [22 NYCRR 1200.27 (a) (2)]). A party attempting to disqualify an attorney under DR 5-108 (a) (1) "must prove: (1) the existence of a prior attorney-client relationship between the moving party and opposing counsel, (2) that the matters involved in both representations are substantially related, and (3) that the interests of the present client and former client are materially adverse" (*Tekni-Plex, Inc. v Meyner & Landis*, 89 NY2d 123, 131 [1996]). When the moving party is able to demonstrate each of these factors, an irrebuttable presumption of disqualification follows (*see id.* at 131).

The irrebuttable presumption is imposed in order to safeguard client confidences and "to free the former client from any apprehension that" they will be used to the client's detriment in another matter (*Solow v Grace & Co.*, 83 NY2d 303, 309 [1994]). The presumption is also intended "to avoid an appearance of impropriety on the part of the attorney or the law firm" (*id.* at 308). However, despite these protective purposes, the disqualification rule can result in interference with a party's right to the counsel of his or her choice and has, in some instances, been employed in bad faith as a litigation tactic (*see Tekni-Plex*, 89 NY2d at 131-132). As a result, courts must take care to "avoid mechanical application of blanket rules" when determining whether the movant has adequately demonstrated each of the necessary elements (*id.* at 132). To that end, the irrebuttable presumption will not arise unless the movant makes the requisite showing as to each of the criteria (*see Kassis v Teacher's Ins. & Annuity Assn.*, 93 NY2d 611, 617 [1999]; *Tekni-Plex*, 89 NY2d at 132).

The duty not to divulge a former client's confidences under DR 5-108 (a) (2) is broader than the attorney-client privilege (*see Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d 631, 637 [1998]). Consequently, "it is not necessary for a party seeking disqualification to show that 'confidential information necessarily will be disclosed in the course of the litigation; rather, a reasonable probability of disclosure should suffice' " (*id.*, quoting *Greene v Greene*, 47 NY2d 447, 453 [1979]). However, disqualification has been found inappropriate either "where there is no substantial relationship [between the issues in the current and former litigation] or where the party seeking disqualification fails to identify any specific confidential information imparted to the attorney" (*Saftler v Government Empls. Ins. Co.*, 95 AD2d 54, 57 [1983]; *Muriel Siebert & Co., Inc. v Intuit Inc.*, 32 AD3d 284, 286 [2006], *affd* 8 NY3d 506 [2007]).

Although, in the motion court, defendants made their disqualification arguments primarily on the basis of the allegedly privileged and confidential information communicated to Storch Amini through Bukchin and her relationship with Alter, on appeal they also argue that Storch Amini should be disqualified because it rendered advice to Bukchin as an Oppenheimer lawyer at their meeting. It is not clear that this argument is preserved but, in any event, it is without merit. Oppenheimer, the party seeking disqualification, has failed to justify application of the irrebuttable presumption of disqualification because it cannot demonstrate the existence of an attorney-client relationship between itself and Storch Amini.

To determine whether an attorney-client relationship exists, a court must consider the parties' actions (*see Wei Cheng Chang v Pi*, 288 AD2d 378, 380 [2001], *lv denied* 99 NY2d 501 [2002]). "[A]n attorney-client relationship is established where there is an explicit undertaking to perform a specific task" (*id.*). While the existence of the relationship is not dependent upon the payment of a fee or an explicit agreement, a party cannot create the relationship based on his or her own beliefs or actions (*Jane St. Co. v Rosenberg & Estis*, 192 AD2d 451 [1993], *lv denied* 82 NY2d 654 [1993]).

As Supreme Court found in the *Alter* action, Bukchin never retained Storch Amini on her own behalf. In addition, in the *Pellegrino* action, Supreme Court determined that Bukchin did not attend the meeting at Storch Amini in her capacity as inhouse counsel for Oppenheimer. The women met with Storch Amini seeking assistance in handling a difficult situation at work. Although Bukchin accompanied Alter to the initial meeting, her purpose was to see what, if any, additional steps she should take to help the women in the legal department.

Neither Bukchin nor Alter retained Storch Amini at that initial meeting. Rather, Alter retained the firm on her own at a later date. Although the attorney-client relationship can encompass a preliminary consultation even where the prospective client does not ultimately retain the attorney, the present case is distinguishable because Bukchin did not undertake the preliminary consultation "with a view toward retention of [Storch Amini]" (*Rose Ocko Found. v Liebovitz*, 155 AD2d 426, 427 [1989]). No attorney-client relationship was established between Bukchin and Storch Amini or, by extension, between Oppenheimer and Storch Amini, under these circumstances.

Since defendants cannot prove the first of the required factors, the irrebuttable presumption of disqualification does not

arise. Thus, defendants have to show that confidential information was disclosed to Storch Amini during that initial meeting. Defendants are unable to identify any such information and, as a result, disqualification is not warranted based on the meeting between Bukchin and Storch Amini.

Nonetheless, defendants assert that Storch Amini should be disqualified because it presumably received confidential and privileged information through Bukchin as a result of her purported attorney-client relationship with Alter and through Bukchin's disclosure of the details of allegedly confidential conversations between herself and Shames.

There is no basis for the conclusion that Bukchin received confidential information from Shames, or that the two had an attorney-client relationship. Clearly, both Shames and Bukchin owed a duty of loyalty to their employer, Oppenheimer, but "[u]nless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees" (*Talvy v American Red Cross in Greater N.Y.*, 205 AD2d 143, 149 [1994], *affd* 87 NY2d 826 [1995]). That both individuals were employed as in-house counsel for Oppenheimer does not render every conversation they may have had subject to privilege.

Here, Shames was "venting" about his emotional state and the effect the litigation was having on him. He chose, perhaps unwisely, to discuss his personal feelings about the pending litigation with Bukchin, but evidently did so because he viewed her as friendly or sympathetic. However, none of the information Shames related was privileged or even pertained to legal issues. His own impression of the relative merit of Alter's suit was not confidential or privileged, as it was not provided in the context of seeking legal advice. As Bukchin's supervisor, Shames was well aware that she was not involved in the company's defense of the sexual harassment suit. Thus, defendants have failed to show any specific attorney-client confidences that were revealed to Bukchin and, by extension, to Storch Amini, as a result of Bukchin's contact with Shames.

It is undisputed that Alter asserted an attorney-client relationship with Bukchin and invoked the attorney-client privilege at her first deposition. However, as noted above, "plaintiff's unilateral beliefs and actions do not confer upon it the status of client" (*Jane St. Co.*, 192 AD2d at 451). Here, the two young women apparently agreed to a confidential relationship in order

to protect their jobs and to prevent Shames from learning about their conversations. Legal advice was neither requested nor provided. Under these circumstances, it was not reasonable for Alter, a paralegal and law student at the time, to believe that she had an attorney-client relationship with Oppenheimer's in-house counsel with respect to her allegations of sexual harassment against the company.

Thus, defendants have failed to show that conversations between the two were properly subject to attorney-client privilege or that any confidential information was actually disclosed through the contact between Bukchin and Alter. Moreover, as Supreme Court found, defendants have not demonstrated what, if any, information Alter obtained from Bukchin that could not have been gained through discovery.

The harsh remedy of disqualification is not necessary under these particular circumstances. However, that is largely due to the specific facts of this case, where plaintiffs ultimately, but fortuitously, obtained no unfair advantage. By consulting with both Bukchin and Alter, counsel was walking a fine ethical line, potentially jeopardizing the viability and fairness of future litigation and the reputation, standing and well-being of the law firm itself.

It is critical that attorneys be acutely alert to situations where the potential for adverse interests may arise, especially since the consequences for both the parties and the attorneys are profound. In the present facts, it was plainly foreseeable that the interests of the individuals that counsel was simultaneously consulting with could become divergent, given Bukchin's position as in-house counsel and the absence of any claim that she was a victim of sexual harassment. It is to be expected that situations such as this one will set alarm bells ringing and be assiduously avoided for the good of all concerned.

Appellants' remaining contentions are without merit.

Accordingly, the order of the Supreme Court, New York County, entered August 8, 2006 (Judith J. Gische, J.), which, to the extent appealed from, denied defendants' motion to dismiss the complaint, or in the alternative, to disqualify plaintiff's attorneys, and the orders of the Supreme Court, New York County, entered November 2, 2006 (Rolando T. Acosta, J.), and March 19, 2007 (Richard F. Braun, J.), which, to the extent appealed from, denied defendants' motions to disqualify plaintiffs' attorneys, should be affirmed, without costs.

ANDRIAS, NARDELLI, GONZALEZ and KAVANAGH, JJ., concur.

Order, Supreme Court, New York County, entered August 8, 2006, and orders, Supreme Court, New York County, entered November 2, 2006, and March 19, 2007, affirmed, without costs.