OPINION OF THE COURT
Richard A. Dollinger, J.
In this matter, the husband in a divorce matter seeks to disqualify an attorney who represents his wife because she previously represented him in two child support proceedings in the last half decade. In pretrial proceedings in this case, the husband brought a motion seeking disqualification of his wife’s selected attorney because, he alleges, he disclosed confidential information to his then-attorney when she represented him in the prior Family Court proceedings. The attorney, in response, produced her own affidavit, opposing the disqualification, arguing that the wife had the right to choose her own counsel over the husband’s objection and, she avers, the husband never made any confidential disclosures to her. The paradox inherent in this matter is evident: how does this court decide whether such confidential information was disclosed without conducting a hearing to determine which declarant—the husband or his former attorney—is being truthful, and at the same time, preserve the confidential nature of those discussions?
Some of the essential facts are undisputed. The wife’s attorney represented the husband in several Family Court matters before 2015. The documents before the court indicate that the attorney represented the husband in a disputed child support matter involving a child from a prior marriage, which resulted in a support order in September 2010. At the time of this proceeding, the husband was married to his current wife. In 2014, the husband retained the attorney again, this time to represent him in a child custody matter involving the emancipation of the child from the prior marriage. The attorney appeared in Family Court with the husband. The Family Court matter was resolved through an order dated July 25, 2014. A year later, the husband’s current wife commenced an action for divorce against him and retained the attorney who had previously represented the husband in the Family Court litigation.
At this point, the facts diverge. The husband, in his affidavit before the court, states that he had “personal and private conversations with the attorney regarding himself, his wife, and his child, his ex-wife, his finances and other matters too numerous to set forth herein.” He provides no further elabora *878 tion, apparently concluding that further disclosure of these confidential matters might prejudice his claims in the matrimonial action. The wife’s attorney challenges those facts. She attests that there was never a private meeting between the attorney and the husband because his current wife—the plaintiff in the pending divorce action—was present at all the meetings. The attorney claims there were no confidential communications between herself and the husband. She claims that any documents produced during the prior litigation were ferried to her by the wife, and known by the wife, and hence, any documents which the husband provided during the prior representation did not contain any confidential information. She denies any confidential communications with the husband about debt, the marital residence or his retirement plans. The husband and wife are both public servants and hence there is no confidential information about their income or benefits, wife’s counsel argues. She concludes with the comment: “There is absolutely nothing about the custody of the litigant’s now-emancipated son that has anything to do with the issues before this court.” In oral argument, wife’s counsel, in addition to disputing the claims that she had access to confidential or privileged information, argues that because the husband’s claims to confidential communications are challenged, she is entitled to a hearing on the nature of the conversations before this court can conclude that she should be disqualified.[1]
The rules on disqualification of counsel are easily stated. The decision to disqualify an attorney from representation rests with the discretion of this court. (Cardinale v Golinello, 43 NY2d 288, 296 [1977]; Lauder v Goldhamer, 122 AD3d 908 [2d Dept 2014].) Because there are “significant competing interests inherent in attorney disqualification cases,” the Court of Appeals has advised against “mechanical application of blanket rules,” in favor of a “careful appraisal of the interests involved.” (Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123, 131-132 [1996].) A motion to disqualify counsel triggers a collision *879 between two important legal and practical considerations. The wife’s right to be represented in this litigation by counsel of her own choosing is a valued right which should not be abridged absent a clear showing that disqualification is warranted. (Avigdor v Rosenstock, 47 Misc 3d 1220[A], 2015 NY Slip Op 50721[U] [Sup Ct, Kings County 2015]; see also S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 443 [1987]; Gulino v Gulino, 35 AD3d 812, 812 [2d Dept 2006].) Conversely, the New York courts have suggested that an attorney must preserve a client’s secrets and confidences and avoid the appearance of impropriety. (Nesenoff v Dinerstein & Lesser, PC., 12 AD3d 427, 428 [2d Dept 2004]; Gabel v Gabel, 101 AD3d 676, 676 [2d Dept 2012].) It is “an undeniable maxim of the legal profession” that an attorney must avoid even “the appearance of impropriety.” (Heelan v Lockwood, 143 AD2d 881, 883 [2d Dept 1988]; see also Galanos v Galanos, 20 AD3d 450, 452 [2d Dept 2005].)
In deciding whether a conflict of interest requiring disqualification exists, the court must consider whether the lawyer or law firm that previously represented the party or entity which is seeking to disqualify that attorney obtained, in the course of that representation, confidential information which would be disclosed or could be used against the former client in the current litigation. (Cardinale v Golinello, 43 NY2d 288, 296 [1977].) As the Court of Appeals later articulated the rule:
“The Code of Professional Responsibility does not in all circumstances bar attorneys from representing parties in litigation against former clients. Rather, DR 5-108 sets out two prohibitions on attorney conduct relating to former clients. First, an attorney may not represent ‘another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client’ (Code of Professional Responsibility DR 5-108 [A] [1] [22 NYCRR 1200.27 (a) (1)]). Second, an attorney may not use ‘any confidences or secrets of the former client except as permitted by DR 4-101 (C) or when the confidence or secret has become generally known’ (Code of Professional Responsibility DR 5-108 [A] [2] [22 NYCRR 1200.27 (a) (2)]).” (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 636 [1998].)
In other words, as originally constructed by the Court of Appeals, there was a two-tiered test applicable here: if the pend *880 ing action is substantially related to the previous Family Court matter, and the wife’s interests are “materially adverse” to her husband’s in the pending action (which neither side disputes), then disqualification is presumed. The Court of Appeals’ approach was later modified, in part, by requiring that a party seeking disqualification of its adversary’s lawyer pursuant to DR 5-108 (A) (1) must prove that there was an attorney-client relationship between the moving party and opposing counsel, that the matters involved in both representations are substantially related, and that the interests of the present client and former client are materially adverse. (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.9 [a], [b] [l]-[2]; Kain Dev., LLC v Krause Props., LLC, 130 AD3d 1229 [3d Dept 2015].) If the husband satisfies all three inquiries, then an irrebuttable presumption of disqualification arises. (Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123, 132 [1996].) In addition, the Fourth Department has added another caution, especially pertinent in matrimonial cases: the described dangers of the offensive use of prior confidential information are “exacerbated when an attorney who has represented the family unit subsequently represents one of the parties in a matrimonial action.” (Forbush v Forbush, 107 AD2d 375, 380 [4th Dept 1985].)
It is not essential that the prior client establish that confidential information will necessarily be disclosed in the course of the litigation. Rather, a “reasonable probability of disclosure” may suffice. (Narel Apparel v American Utex Intl., 92 AD2d 913, 914 [2d Dept 1983] [a reasonable probability of disclosure is sufficient].) Furthermore, a court should infer the “reasonable probability of disclosure of confidences” from the particular nature of the past and present representations at issue. (Forbush v Forbush, 107 AD2d 375, 379-380 [4th Dept 1985] [courts will infer the “reasonable probability of disclosure of confidences” from the particular nature of the past and present representations at issue]; Flaum v Birnbaum, 107 AD2d 1087 [4th Dept 1985] [the former client need only show a reasonable probability that confidential information will be disclosed].) Finally, doubts as to the existence of a conflict of interest must be resolved in favor of disqualification. (Justinian Capital SPC v WestLB AG, N.Y. Branch, 90 AD3d 585, 585 [1st Dept 2011], citing Rose Ocko Found. v Liebovitz, 155 AD2d 426, 428 [2d Dept 1989]; see also Sperr v Gordon L. Seaman, Inc., 284 AD2d 449, 450 [2d Dept 2001] [disqualification still apropos even if “no proof of a risk that a client confidence might be betrayed”].)
*881 The courts also caution that the attorney’s sworn statements that she did not obtain confidential information may not suffice to prevent disqualification. The fact that a lawyer may not have, in fact, obtained any confidential information in connection with the first employment does not prevent disqualification. Long ago, the Court of Appeals noted in Matter of Kelly (23 NY2d 368, 376 [1968]): “[W]ith rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship.” The Court of Appeals reprised that refrain in Cardinale v Golinello (43 NY2d 288 [1977]):
“Irrespective of any actual detriment, the first client is entitled to freedom from apprehension and to certainty that his interests will not be prejudiced in consequence of representation of the opposing litigant by the client’s former attorney. (Drinker, Legal Ethics, pp 109, 115.) The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests” (id. at 296; see also Gould v Decolator, 131 AD3d 448 [2d Dept 2015]).
The Court of Appeals put icing on that cake in Greene v Greene (47 NY2d 447 [1979]):
“An attorney traditionally has been prohibited from representing a party in a lawsuit where an opposing party is the lawyer’s former client (e.g., Hatch v Fogerty, 40 How Pr 492, 503). Underlying this rule is the notion that an attorney, as part of his fiduciary obligation, owes a continuing duty to a former client—broader in scope than the attorney-client evidentiary privilege—not to reveal confidences learned in the course of the professional relationship.” (Id. at 453; Jamaica Pub. Serv. Co. v A1U Ins. Co., 92 NY2d 631, 637 [1998] [duty not to divulge a former client’s confidences under DR 5-108 (A) (2) is broader than the attorney-client privilege].)
While these commands from the Court of Appeals tend to suggest disqualification should be almost presumed in this matter, this court notes that the burden of proof to establish the factual predicate for disqualification rests with the husband. (Gulino v *882 Gulino, 35 AD3d 812 [2d Dept 2006].) Furthermore, disqualification becomes more unlikely if there is no substantial relationship between the issues in the current and former litigations or where the party seeking disqualification fails to identify any specific confidential information imparted to the attorney. (Pellegrino v Oppenheimer & Co., Inc., 49 AD3d 94, 98 [1st Dept 2008]; Muriel Siebert & Co., Inc. v Intuit Inc., 32 AD3d 284, 286 [1st Dept 2006], affd 8 NY3d 506 [2007] [communication itself must be primarily of a legal, not factual, character].)
Before analyzing the legal and factual disputes in this case, this court notes three changes in the legal scape involving disqualification. First, the Rules of Professional Conduct involving disqualification have been changed since most of the Court of Appeals pronouncements cited above. In particular, the definition of “confidential information”—possession of which by an adverse counsel can trigger disqualification—has been restated and codified as: “information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential.” (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.6 [a].) “Confidential information” does not ordinarily include a lawyer’s legal knowledge or legal research, or information that is generally known in the local community or in the trade, field or profession to which the information relates. (Id.; Mayers v Stone Castle Partners, LLC, 126 AD3d 1, 7 [1st Dept 2015] [no disqualification, under the rules, if the alleged confidential facts are “generally known”]; but see State of New York ex rel. Danon v Vanguard Group, Inc., 2015 NY Slip Op 32213[U], *19 [Sup Ct, NY County 2015] [cannot use confidential information to give any subsequent client an unfair and unethical advantage].) The new rules have also changed the analysis regarding the matters involved in the prior and current representations. The matters must be “substantially related.” (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.9; Cohen v Cohen, 125 AD3d 589, 591 [2d Dept 2015].)
In this respect, the fact that this case involves a matrimonial matter means the notion of confidential information—under the control of the husband—must be weighed against the statutory and regulatory requirements for full disclosure—to this wife—of husband’s assets and income. (Domestic Relations Law § 236 [B] [4] [a]; Family Ct Act § 424-a; 22 NYCRR 202.16 *883 [f] [1] [i] [requiring statement of net worth to be filed with the court]; see also Hoffman v Hoffman, 31 AD3d 1125 [4th Dept 2006].) The statutory requirement for disclosure is broad—“all income and assets of whatsoever kind and nature”[2]—and therefore, the husband is somewhat constrained in alleging that any aspect of finances—his income or net worth—is “confidential” under the rules. In short, the husband’s claim of confidential factual disclosures to his prior counsel is undercut by his legal obligation, within the current litigation, to make commensurate disclosure. While the facts of the husband’s finances may not be “generally known” at the time of the commencement of the action, the law requires those facts—involving financial issues—to be disclosed during the litigation and hence, they will be known to both sides, regardless of the husband’s pre-commencement claims of “confidentiality.” (Mayers v Stone Castle Partners, LLC, 126 AD3d at 7.) Similarly, if the husband confided personal and confidential details of his private life—and his marriage—to his prior counsel during conversations with her, the current no-fault divorce statute, which both parties allege as the basis for this divorce, makes such intimate details unnecessary as there will be no trial on any issues related to fault. (Domestic Relations Law § 170 [7]; Palermo v Palermo, 100 AD3d 1453 [4th Dept 2012].) In short, the husband’s claim that his financial information is “confidential” is somewhat muted because his wife and her attorney are entitled to a full accounting of it and his personal information is not relevant to any issue in the divorce.
A third change, of recent vintage, also colors this court’s analysis. On repeated occasions, the New York appellate courts have directed that a “clear showing” of access to confidential facts is required to justify disqualification. (Matter of Sosa v Serrano, 130 AD3d 636 [2d Dept 2015]; Jozefik v Jozefik, 89 AD3d 1489 [4th Dept 2011]; Gustafson v Dippert, 68 AD3d 1678 [4th Dept 2009]; Gulino v Gulino, 35 AD3d 812 [2d Dept 2006]; Aryeh v Aryeh, 14 AD3d 634 [2d Dept 2005].) This objective standard that the moving party must meet to justify disqualification contrasts vividly with the subjective standard embodied in the “appearance of a conflict” standard long articulated as valid in New York. If a litigant is required to make a “clear showing” of their prior counsel’s access to specific facts, then the applicant’s suspicions and apprehensions that the conflict might impair their claims—the underlying legal *884 basis for the “appearance of impropriety” to the offended litigant—seems to be eroded. The Court of Appeals suggested as much in Solow v Grace & Co. (83 NY2d 303, 312 [1994]) when it suggested that it would not follow, in all cases, prevailing understanding that the duty of loyalty owed to a former client and the avoidance of even an appearance of impropriety are so important that any harm associated with disqualification was minimal when compared with furthering those goals. The Fourth Department echoed that sentiment in Christensen v Christensen (55 AD3d 1453 [4th Dept 2008] [the mere appearance of impropriety alone would be insufficient to warrant disqualification, rather, it must be shown that a party will suffer actual prejudice or a substantial risk thereof]). If the test is “actual prejudice” or “substantial risk” of such and a “clear showing” must be established, then the “doubts resolved in favor of disqualification” or “the mere appearance of impropriety” standards articulated by the numerous appellate decisions in New York also seem to be nudged to the wayside. (Matter of Tartakoff v New York State Educ. Dept., 130 AD3d 1331 [3d Dept 2015]; Anonymous v Anonymous, 262 AD2d 216 [1st Dept 1999].) If the standard requires a “clear showing” of “actual prejudice,” then the courts seem to dictate that a trial court, considering disqualification, should have no “doubt” about the prior attorney’s possession, and anticipated disclosure of, confidential information.
Despite this apparent trend, the reports of the death of the “appearance doctrine” are, in the often-misquoted words of Mark Twain, “greatly exaggerated.” The Second Department has announced contradictory opinions on this subject. In 2009, the Second Department seemed to entomb the “appearance” concept: “Absent actual prejudice or a substantial risk thereof, the appearance of impropriety alone is not sufficient to require disqualification of an attorney.” (Matter of Lovitch v Lovitch, 64 AD3d 710, 711 [2d Dept 2009].) Yet, in 2014, the Second Department breathed new life into the skeletal remains of the concept in Halberstam v Halberstam (122 AD3d 679 [2d Dept 2014] [any doubts as to the existence of a conflict of interest must be resolved in favor of disqualification and, moreover, even when an actual conflict of interest may not exist, disqualification may be warranted based on a mere appearance of impropriety]). The First Department has somewhat steadfastly supported the “appearance/doubts” doctrines, suggesting that disqualification flows from those subjective perspectives. *885 (Matter of Strasser, 129 AD3d 457 [1st Dept 2015] [representation would impermissibly place that lawyer in a position which would give the appearance of representing conflicting interests]; Roddy v Nederlander Producing Co. of Am., Inc., 96 AD3d 509 [1st Dept 2012].) The Third Department has echoed that the “doubts” theory remains alive and well. (Matter of Tartakoff v New York State Educ. Dept., 130 AD3d 1331, 1333 [3d Dept 2015].) Finally, this evolving “clear showing” standard seems to be in direct contrast to the “prime directive”[3] from appellate courts on matters relating to disqualification: i.e., that the decision rests solely in the discretion of the trial court. If a court may only disqualify counsel upon a “clear showing,” then the scope of permissible judicial discretion is, in this court’s view, substantially circumscribed. If the court finds that no “clear showing” has been made, then the court lacks the discretion to disqualify counsel. Furthermore, in the absence of a “clear showing,” even if the court concludes that a litigant has a reasonable apprehension that his former attorney knows confidential information, no disqualification is warranted.
These seemingly subtle changes in the standards to be utilized in a motion to disqualify an attorney with whom the husband in this case had a prior attorney-client relationship are crucial in this matter because the facts here could easily support the conclusion of an “appearance of a conflict,” but not meet the “clear showing” standard. The current action involves a claim for no-fault divorce. (Domestic Relations Law § 170 [7].) There are no children. The prior action in which the wife’s attorney represented the husband involved a child support proceeding for the husband’s child from a prior marriage. The 2010 Family Court proceeding, involving the husband and his former wife, was settled through a consent order. Based on the Family Court order, it appears there was financial disclosure made by the husband during the proceeding. These disclosures, made through his current wife’s attorney, were made to his former wife. It is difficult to consider this information, dated more than five years ago, as currently confidential. There is no allegation, in the papers before this court, that the husband’s financial or other confidential information, extant in 2010, would still be relevant to any financial issues involved in this 2015 divorce proceeding.
*886 In 2014, the husband’s ex-wife moved to terminate her child support payments because the child, the subject of the first proceeding, was now emancipated. The Family Court declared the husband’s son emancipated, and there is no evidence that any confidential financial information was—or even a suggestion that such information would have been—conveyed between the husband and his then-attorney. This court cannot presume that any confidential financial information was conveyed during this 2014 proceeding, as the only issue was whether the child was emancipated, a factual determination made based on the child’s or other parent’s conduct.
Nonetheless, this court must carefully consider the husband’s factual claim that he disclosed “confidential facts too numerous to describe” to his wife’s current attorney. In response, the wife’s current attorney, in addition to her claim that she did not engage in confidential communications with the husband, argues that there are few confidential or privileged issues in the pending case. First, the couple have no children together, which means the child support issues, present in the prior Family Court proceedings, are not present here. Second, the couple in this divorce are both public employees, so there is likely little dispute over income amounts and, even if there were any disputes, both sides are entitled to financial disclosure during the proceeding. There are, in the affidavits and submissions currently before the court, recent disputes over the conduct of the parties prior to and during the pendency of the action. But these disputes are factual in nature, and the court cannot foresee how they would require the wife’s attorney’s disclosure of any confidential information obtained from the husband. Based on these conclusions, the wife’s attorney argues the husband has failed to meet his burden of proof that she possesses confidential information proffered by the husband during privileged communications in the prior representation sufficient to justify disqualification.
From this court’s perspective, the husband’s allegations regarding the transfer of confidential information in this case are thin. He simply recites that he engaged in conferences with his prior counsel—now representing his wife—“too numerous to mention” regarding his finances and other allegedly personal and confidential information. He details no specific disclosure— financial or otherwise—that he made confidentially to his prior attorney. While these allegations may be somewhat light, they *887 reflect the Catch-22[4] difficulty suggested by the pending motion in this case. To establish the exact nature of “a clear showing” of the confidential communications—which the courts of this state now require—the husband would have to detail the exact content of those conversations—the facts, legal opinions or privileged material discussed, and make that disclosure to the counsel for his current adversary, his wife. In short, the husband, in this case, has a justifiable excuse—maintaining confidentiality of what he considers privileged information—for the general nature of his allegations regarding the confidential communications with his former counsel. However, the husband’s general allegations contrast sharply with the exacting denunciations of the wife’s counsel: she unabashedly denies that she ever had any confidential communications with the husband in her prior work on his behalf.
If this court were to decide the issue of disqualification solely on the basis of the current affidavits, the court would be choosing between two inchoate versions of the facts and crediting one version or the other—simply put, it is a “client says, attorney says” conundrum. Traditionally, when faced with different versions of the contested facts, this court would deny both applications and refer the matter to a hearing, as apparently other New York courts have done. (Olmoz v Town of Fishkill, 258 AD2d 447 [2d Dept 1999]; Poli v Gara, 117 AD2d 786 [2d Dept 1986]; Matter of Weinberg, 132 AD2d 190 [1st Dept 1987].) The Court of Appeals, albeit almost a century ago, suggested that issues involving attorneys’ disqualification should not be decided on the basis of conflicting affidavits, but instead a hearing is required. (Matter of Weitling, 266 NY 184 [1935].) However, the prospect of a hearing in this instance leads to a difficult multi-faceted dilemma: how can the court conduct a hearing on the husband’s claim that he made confidential or privileged communications to the wife’s attorney during her representation of him without requiring him to disclose those otherwise confidential and privileged communications to the court and his prior counsel? Any hearing in this case would require the husband to set forth the dates and times of confidential communications and describe those communications in detail. The wife’s attorney—the exact person to whom *888 those confidential communications would be most informative in the pending matter—will be present in the court room and could presumably cross-examine the husband. The cross-examination would be nearly legally incomprehensible, with the wife’s counsel arguing that the husband never told her confidential information and the husband swearing that he did. In addition, the wife’s counsel would then be required to take the stand, testify to her version of events and be subjected to cross-examination to test her veracity on her claims that she was never told anything confidential. This court would be faced with ascribing veracity either to the husband or the wife’s attorney, a frequent counsel in cases before this court. The notion of an attorney being cross-examined about allegedly confidential communications between the attorney and her prior client—when her current client with diametrically contrary interests to her former client sits in the courtroom—is almost surreal. A number of courts have noted the intrinsic dangers of holding a hearing on confidential disclosures between clients and their attorneys. In a California case, Pemstein v Pemstein (2004 WL 1260035, 2004 Cal App Unpub LEXIS 5450 [Ct App, June 9, 2004, No. G029394] [ordered not published]), the court declined to require proof that confidential information had passed between attorney and client as a result of prior representation and simply invoked the “appearance” rule.
“This is simply not the test. The rule ‘does not require the “former” client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. It is the possibility of the breach of confidence, not the fact of the breach that triggers disqualification’. . . Moreover, ‘It has long been recognized that where ethical considerations are concerned, disqualification should be ordered not only where it is clear that the attorney will be adverse to his former client, but also where it appears that he might. [Citations.] . . . Disqualification is proper here to avoid any appearance of impropriety.’ ” (2004 WL 1260035, *4, 2004 Cal App Unpub LEXIS 5450, *11 [emphasis omitted].)
Other courts in other states have grappled with trying to establish proof of confidential communications without exposing the information. In O Bldrs. & Assoc., Inc. v Yuna Corp. of NJ (206 NJ 109, 19 A3d 966 [2011]), the New Jersey Supreme Court recognized the moving party’s dilemma when a factual *889 dispute over the nature of confidential communications is the subject of a disqualification request:
“To be sure, a movant seeking disqualification of opposing counsel always is presented with a Hob-son’s choice in respect of the disclosure of confidential information.. In those instances where the disclosure of confidential information must be made so that the court can grapple fairly with the issues, the parties may protect the confidentiality of their information by, among other means, requesting that the record be subject to a protective order and the movant may further request that the application be considered in camera. Furthermore, in those instances, as the one presented in this appeal, where the lawyer whose disqualification is sought denies ever receiving the claimed confidential information, an appropriate screening device would be to engage substitute counsel to oppose the disqualification motion.” (206 NJ at 129, 19 A3d at 978 [citations omitted]; see also Trone v Smith, 621 F2d 994, 999 [9th Cir 1980].)
The state courts have considered referring the hearing on confidential materials to another judge. (Burch & Cracchiolo, P.A. v Myers, 237 Ariz 369, 376, 351 P3d 376, 383 [Ct App 2015] [trial judge referred disqualification motion to another judge to evaluate claims of confidential information, but did not hold a hearing].) Other courts have suggested some form of ex parte hearing or in camera inspection. (Barragree v Tri-County Elec. Coop., Inc., 263 Kan 446, 461-464, 468-469, 950 P2d 1351, 1361-1362, 1365 [1997] [holding party seeking disqualification waives attorney-client privilege as to the court so the court may assess the contents of allegedly confidential information, and the party may present the information either in a “hearing out of the presence of the party against whom confidentiality is to be protected or in camera inspection”]; Keith v Keith, 140 So 3d 1202, 1211-1212 [La Ct App 2014] [noting procedures for determining a motion to disqualify should “not penalize the plaintiff for asserting his right to the attorney-client privilege,” and directing the trial court to use certain methods to protect privileged information including in camera inspection, while being cognizant of the opposing side’s inability to challenge certain evidence]; Decora Inc. v DW Wallcovering, Inc., 899 F Supp 132 [SD NY 1995] [ex parte hearing and document inspection to establish disqualification]; Faughn v Perez, 145 Cal App 4th 592, 602, 51 Cal Rptr 3d 692, 699 [2006] [noting *890 the presentation of “direct evidence of facts to support a motion to disqualify counsel that is related to confidential information is constrained, of course, by the need to avoid the disclosure of the former client’s confidences and secrets,” and identifying, as one method for protecting confidences, the ability “to file the documents with the court under seal for in camera review”].) Even if this court elected to hold a hearing, the hearing would implicate other significant obstacles to truth finding. The fact that the wife’s counsel would be arguing her own veracity—on her version of the facts—before the court implicates, at least in concept, the attorney-witness rules which frown on attorneys arguing their own veracity before the courts. (Fuller v Collins, 114 AD3d 827 [2d Dept 2014] [the advocate-witness rules contained in the Rules of Professional Conduct—(22 NYCRR 1200.0) rule 3.7—provide guidance, but not binding authority, for courts in determining whether to disqualify an attorney]; see also S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 440 [1987].)
This court acknowledges that other New York courts, in attempting to decide disqualification questions, have held hearings to evaluate the allegations regarding the transfer of confidential and privileged communications. (Walker v Steinberg, 2014 NY Slip Op 32612[U] [Sup Ct, NY County 2014]; Soekoro v Glazer, 2008 NY Slip Op 33156[U] [Sup Ct, NY County 2008].) But in this instance, the hearing would require the husband to disclose confidential or privileged information that he relayed to his former attorney. This court cannot invade the husband’s claims of privilege and confidentiality with his former counsel. Conversely, this court also acknowledges that if the wife’s attorney is disqualified, it will be based on allegations that are not subject to the usual methods of testing veracity: i.e., a hearing or trial. The wife’s counsel could easily conclude that the allegations from her former client are simply an invention to thwart the wife’s choice of counsel, an acknowledged danger ever-present when disqualification claims arise. (Lucci v Lucci, 150 AD2d 650 [2d Dept 1989].) This court does not, in any manner, discredit the veracity of the wife’s counsel. However, the path to establishing the truthfulness of her assertions is fraught with practical difficulties that could impair her former client’s position in this matter.
In exercising discretion in this case, the court declines to hold a hearing in this matter. The “clear showing” that recent New York courts have imposed as a predicate to such motions is, in this court’s view, a reaction to the tsunami of disqualifica *891 tion motions that have rippled through the courts in the last two decades. The “doubts in favor of disqualification” and the “mere appearance” doctrines—which might otherwise justify disqualification in this case—have seemingly been relegated to the legal equivalent of the “back seat” in the face of a need for the objectant to detail the exact nature of the allegedly confidential information conveyed during the prior representation. The husband’s allegations in this case fail to meet that test. Even if the husband established a prima facie case of disqualification, convening a hearing on these allegedly confidential disclosures would trigger other practical difficulties that further caution this court to restrain its exercise of discretion. Having decided against disqualification, this court must still uphold the husband’s confidence in the legal system and his confidence that his confidential information—to which his former attorney is bound not disclose—will not be used against his interests. Therefore, this court will carefully, throughout the process of this case, evaluate the wife’s legal position and be attentive to any legal or factual argument which may be derived from the wife’s attorney’s prior representation of the husband.[5] In making this commitment, this court understands that an “after-the-fact” disqualification may be a hollow gesture in the husband’s eyes: after all, the wife, his opponent, could already know the confidential facts—as conveyed through her current counsel—and could easily bring them to the attention of any successor attorney. However, there is no evidence that the wife’s attorney has made such disclosures to date and the court is confident that she understands her ethical obligations to her former client. This court will not presume any violation by the wife’s counsel as it would constitute sheer speculation. (Olmoz v Town of Fishkill, 258 AD2d 447, 448 [2d Dept 1999].)
The motion to disqualify the wife’s attorney is denied.

. The motion to disqualify counsel was brought at the initial stages of this proceeding and thus the court draws no adverse inference from the motion. (Matter of Valencia v Ripley, 128 AD3d 711 [2d Dept 2015] [failure to promptly seek disqualification can constitute a waiver of such a claim].) In considering these issues, the appellate courts have warned trial judges to be cautious regardless of the timing of the motion: disqualification motions are often disfavored, especially if used offensively to “inflict [ ] hardship on . . . [a] client and delay upon the courts.” (Matter of Peters, 124 AD3d 1266, 1267 [4th Dept 2015].)

. Domestic Relations Law § 236 (B) (4) (a).

. See Star Trek: First Contact, Paramount Pictures (1996); Articles of the Federation, ch I, art II, ¶ VII.

. (Joseph Heller, Catch-22 [1961].) This manufactured metaphor for an unsolvable conundrum is widely referenced among New York judges. (See e.g. Matter of Jessica L. [Errol M.—Diane L.], 93 AD3d 522, 523 [1st Dept 2012]; People v Martinez, 136 Misc 2d 665, 666-667 [Sup Ct, Queens County 1987].)

. This court acknowledges an exception to the disqualification rules “where withdrawal would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case.” (Salomone v Abramson, 48 Misc 3d 318, 328 [Sup Ct, NY County 2015] [internal quotation marks omitted].) The attorney currently representing the wife is among this region’s most qualified practitioners and an expert in matrimonial law. While her work is easily described as “superior,” this court cannot conclude that she is irreplaceable, as there are others with comparable “distinctive” skills in the matrimonial area.